26 P.3d 236 (2001)
143 Wash.2d 923
STATE of Washington, Petitioner,
v.
James A. VREEN, Respondent.
No. 69550-4.
Supreme Court of Washington, En Banc.
Argued February 15, 2001.
Decided June 21, 2001.
Steven Tucker, Spokane County Prosecutor, Kevin Michael Korsmo, Deputy, Spokane, for petitioner.
Paul J. Wasson, II, Attorney at Law, Spokane, for respondent.
SANDERS, J.
Division Three of the Court of Appeals held the defendant was erroneously denied a peremptory challenge and such error cannot be harmless. Accordingly it reversed James A. Vreen's convictions for vehicular homicide and vehicular assault, remanding for a new trial. State v. Vreen, 99 Wash. App. 662, 994 P.2d 905 (2000). We agree.

FACTS
Shortly after midnight on November 2, 1997, 20-year-old James A. Vreen and five teenagers drove toward People's Park in Spokane. While en route the driver failed to negotiate a particularly sharp curve causing the car to hit a guardrail, fly off the embankment, and strike two trees before coming to a stop at the base of a telephone pole.
Alicia Easterwood and Katherine Campbell were thrown from the car and killed instantly. John Rohloff (Vreen's cousin) was trapped in the vehicle and died at the scene. James Vreen and Wesley Forrester were both seriously injured. Nate Haux escaped with minor cuts and bruises.
Vreen was in the driver's seat when the police arrived. He was charged with three counts of vehicular homicide and one count of vehicular assault. While still in the hospital Vreen told a reporter that his cousin Rohloff was actually the driver and he had changed *237 seats with Rohloff after the accident so that no one would get in trouble. Vreen later stipulated he was the driver.
The jury in Vreen's first trial was unable to reach a consensus. Prior to the second trial the state sought to exclude evidence relating to the close personal relationship between Vreen and Rohloff and to admit evidence that Vreen was willing to blame the accident on Rohloff. The trial court denied both motions.
During voir dire Vreen, an African-American, sought to use a peremptory strike against juror number 55, the only African-American on the panel. The state objected, citing Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The court asked Vreen why he wanted to remove number 55, found the reason inadequate, and denied use of the strike. The next week (still during voir dire) the state asked that the exchange regarding the Batson objection be made part of the record.
The court then invited defense counsel to articulate a nondiscriminatory reason for exercising the strike. Vreen stated that because juror number 55 was a pastor and retired from the military "he would have been of an authoritarian mindset, so could give more credence to the state's arguments and evidence." I Report of Proceedings (RP) at 30. The court again found the reason inadequate and again refused, this time on the record, to permit Vreen to exercise a peremptory strike against number 55.
Number 55 sat on the jury which convicted Vreen on all counts. Vreen appealed and the state cross appealed. Division Three reversed, holding denial of the strike was erroneous and per se reversible. Vreen, 99 Wash.App. at 671, 994 P.2d 905. The Court of Appeals also concluded the trial court's evidentiary rulings were within its discretion. Id. at 673, 994 P.2d 905. The state sought, and we granted, review.

Analysis

DENIAL OF PEREMPTORY CHALLENGE
Batson, 476 U.S. at 89, 106 S.Ct. 1712, holds "the State's privilege to strike individual jurors through peremptory challenges[ ] is subject to the commands of the Equal Protection Clause." Six years later in Georgia v. McCollum the High Court decreed, "the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges," 505 U.S. 42, 59, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), reasoning, "Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the samein all cases, the juror is subjected to open and public racial discrimination." Id. at 49, 112 S.Ct. 2348.
Batson and its progeny utilize a three part test to determine whether a peremptory challenge is race based:
[O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.
Purkett v. Elem, 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (citing Hernandez v. New York, 500 U.S. 352, 358-59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion); Hernandez, 500 U.S. at 375, 111 S.Ct. 1859 (O'Connor, J., concurring in judgment); Batson, 476 U.S. at 96-98, 106 S.Ct. 1712).
The Supreme Court cautioned, "The second step of this process does not demand an explanation that is persuasive, or even plausible." Purkett, 514 U.S. at 767-68, 115 S.Ct. 1769. While Batson requires that the proponent have "`legitimate reasons'" for exercising the strike (Batson, 476 U.S. at 98 n. 20, 106 S.Ct. 1712), this does not mean that the reason proffered must make sense, only that it be a reason that does not deny equal protection. Purkett, 514 U.S. at 769, 115 S.Ct. 1769. "`Unless a discriminatory intent is inherent in the ... explanation, the reason offered will be deemed race neutral.'" Id. at 768, 115 S.Ct. 1769 (quoting Hernandez, 500 U.S. at 360, 111 S.Ct. 1859).
*238 Here the state admits the peremptory strike was wrongly denied; however it argues "that error in rejecting a peremptory challenge is harmful only when it results in the seating of a juror whose partiality may be in question or some other indicia of prejudice exists." Suppl. Br. of Pet'r at 10.
The state asserts its position is bolstered by the recent Supreme Court ruling in United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). But as the Court of Appeals observed, Martinez-Salazar is clearly distinguishable. In Martinez-Salazar the criminal defendant sought to remove a potential juror for cause and the district court denied the for-cause challenge. Martinez-Salazar, 528 U.S. at 315, 120 S.Ct. 774. Martinez-Salazar then utilized one of his peremptory challenges rather than permitting the objectionable juror to sit on his jury. Id. Notwithstanding, he was convicted. On appeal Martinez-Salazar claimed the erroneous denial of his for-cause challenge forced him to waste one of his peremptory challenges on a juror who should have been removed for cause. Id.
The Supreme Court disagreed: "The District Court did not demandand Rule 24(b) did not requirethat Martinez-Salazar use a peremptory challenge curatively. In choosing to remove Gilbert rather than taking his chances on appeal, Martinez-Salazar did not lose a peremptory challenge." Id. at 315-16, 120 S.Ct. 774. The Court noted that had the district court's ruling resulted in the seating of a juror who should have been removed for cause, the proper remedy would be reversal. Id. at 316, 120 S.Ct. 774. However for better or worse Martinez-Salazar effectively eliminated that possibility when he exercised his peremptory challenge to remove the objectionable juror. Thus the key distinguishing feature between Martinez-Salazar and the instant matter is Martinez-Salazar was not denied the use of any of his peremptory challenges, and the offending juror did not sit on the jury, whereas here Vreen was denied use of one of his peremptory strikes and juror number 55 sat on the panel that convicted him.
Other jurisdictions have similarly limited Martinez-Salazar's holding. For example the Supreme Court of Colorado concluded, "Martinez-Salazar focus[es] only on whether a defendant's federal constitutional rights are violated simply because he removes a juror with a peremptory challenge when this juror should have been removed for cause." People v. Lefebre, 5 P.3d 295, 308 (Colo.2000). Nor was that the situation here. The Court of Appeals was correct to distinguish this case from Martinez-Salazar.
The state further contends footnote four in Martinez-Salazar questions the entire line of per se reversal cases because they predate the development of harmless error analysis. Not so. Footnote four arguably questions the propriety of utilizing an often cited passage of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled on other grounds by Batson, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to support the proposition that the erroneous denial of a peremptory challenge is per se reversible. See Swain, 380 U.S. at 219, 85 S.Ct. 824 ("The denial or impairment of the right [to peremptory challenge] is reversible error without a showing of prejudice."). Such is the case because the particular passage in Swain was not essential to the decision and also because the case itself predates the development of harmless error analysis. Martinez-Salazar, 528 U.S. at 316-17, 120 S.Ct. 774.
Several circuits have addressed the denial of peremptory challenges in terms of harmless error, but the vast majority have found harmless error doctrine simply inappropriate in such circumstances. See Tankleff v. Senkowski, 135 F.3d 235, 248 (2d Cir.1998) (harmless error analysis is inappropriate in context of Batson errors); United States v. Ruuska, 883 F.2d 262, 268 (3d Cir.1989) (affirming the automatic reversal rule in Swain and specifically finding "[t]he impairment of this right, therefore, cannot be dismissed as harmless."); Kirk v. Raymark Indus., Inc., 61 F.3d 147, 160 (3d Cir.1995) ("[A] showing of prejudice is not required to reverse a verdict after demonstrating that a statutorily-mandated, peremptory challenge was impaired."); United States v. Broussard, 987 F.2d 215, 221 (5th Cir.1993) (Application of harmless error review to denial of a peremptory *239 challenge "would eviscerate the right to exercise peremptory challenges, because it would be virtually impossible to determine that [the denial], injurious to the perceived fairness of the petit jury, [was] harmless."), abrogated on other grounds by J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994); United States v. McFerron, 163 F.3d 952, 956 (6th Cir.1998) ("[W]e reject the application of harmless error analysis to the denial of a right to exercise peremptory challenges."); Olympia Hotels Corp. v. Johnson Wax Dev. Corp., 908 F.2d 1363, 1369 (7th Cir.1990) ("[I]ssues of entitlement to a particular kind of tribunal are in general not subject to the harmless error rule.... For example, .... [i]t is reversible error to deny a party to a jury trial the peremptory challenges to which the rules of procedure entitle him." (citations omitted)); Ford v. Norris, 67 F.3d 162, 170 (8th Cir.1995) (holding a Swain error is not subject to harmless error analysis); United States v. Annigoni, 96 F.3d 1132, 1144 (9th Cir.1996) (en banc) ("The error in this casethe erroneous denial of a right of peremptory challengeis simply not amenable to harmless-error analysis."); but see United States v. Patterson, 215 F.3d 776, 781 (7th Cir.) (applying harmless error to peremptory challenges), cert. granted in part and judgment vacated in part by 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000).
Whether an error may be harmless requires the reviewing court to determine whether the error is a "classic `trial error'" or a "`[s]tructural' error[ ]." Annigoni, 96 F.3d at 1143 (quoting Arizona v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). A classic trial error is one "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Fulminante, 499 U.S. at 307-08, 111 S.Ct. 1246. Structural errors, however, are "defects in the constitution of the trial mechanism, which defy analysis by `harmless-error' standards." Id. at 309, 111 S.Ct. 1246.
The Ninth Circuit has declined to adopt the bright line test that all classic trial error is subject to harmless error analysis and all structural error is per se reversible. Annigoni, 96 F.3d at 1144. Nevertheless the court determined "[T]he erroneous denial of a right of peremptory challengeis simply not amenable to harmless-error analysis." Id. The court observed that application of such a standard would be unworkable:
To apply a harmless-error analysis in this context would be to misapprehend the very nature of peremptory challenges. The peremptory challenge is used precisely when there is no identifiable basis on which to challenge a particular juror for cause.... Although a litigant may suspect that a potential juror harbors an unarticulated bias or hostility, that litigant would be unable to demonstrate that bias or hostility to an appellate court reviewing for harmless error. Similarly, the government would be hard-pressed to bear its burden of proving that the seating of a peremptorily challenged juror did not harm the defendant.
Annigoni, 96 F.3d at 1144-45.
In so holding the court recognized, "It would be difficult if not impossible for a reviewing court to determine the degree of harm resulting from erroneously allowing a juror to sit despite an attempted peremptory challenge." Id. at 1145. This is due largely to the fact that, short of taping jury deliberations, there is no way of knowing exactly how the error affected the outcome, if at all. "To subject the denial of a peremptory challenge to harmless-error analysis would require appellate courts to do the impossible: to reconstruct what went on in jury deliberations through nothing more than post-trial hearings and sheer speculation." Id. Thus the court declined to apply a harmless error analysis and found wrongful denial of a peremptory challenge requires reversal. Id. at 1147. We agree.
Much of the state's argument focuses on "peremptory loss cases," i.e., cases involving the erroneous denial of a challenge for cause which the proponent of the challenge seeks to cure by applying one of his peremptory strikes. However this case does not ask *240 whether a litigant "loses" a peremptory strike when he strikes a juror who should have been removed for cause. As the state concedes, "The peremptory `loss' cases are distinguishable from the situation presented here." Suppl. Br. of Pet'r at 10.
Rather, the question presented here is whether the erroneous denial of a peremptory challenge can ever be harmless when the objectionable juror actually sits on the panel that convicts the defendant. Division Three concluded it could not. This holding is consistent with the rule set forth by the Ninth Circuit in Annigoni and nearly every other Circuit Court of Appeals decision on point. The decision by Division Three is also mirrored in a recent decision from Division One. In State v. Evans Division One held: "Any impairment of a party's right to exercise a peremptory challenge constitutes reversible error without a showing of prejudice. As such, harmless error analysis does not apply." State v. Evans, 100 Wash.App. 757, 774, 998 P.2d 373 (2000) (footnote omitted).
We agree erroneous denial of a litigant's peremptory challenge cannot be harmless when the objectionable juror actually deliberates and accordingly we affirm the Court of Appeals.

OTHER EVIDENTIARY RULINGS
The state also asserts the trial court erred when it precluded the government from introducing evidence relating to the interview in which Vreen said he was not the driver of the vehicle. The state also claims it was error for the trial court to allow Vreen to present evidence of his close personal relationship with Rohloff.
"We review a trial court's decisions as to the admissibility of evidence under an abuse of discretion standard." State v. Pirtle, 127 Wash.2d 628, 648, 904 P.2d 245 (1995) (citing State v. Lane, 125 Wash.2d 825, 831, 889 P.2d 929 (1995)).
Evidence must be relevant to be admissible. ER 402. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Even though relevant, evidence may nevertheless be excluded if it is unfairly prejudicial, would confuse the issues, or would mislead the jury. ER 403. State v. Luvene held:
We review a trial court's evaluation of relevance under ER 401 and its balancing of probative value against its prejudicial effect or potential to mislead under ER 403 with a great deal of deference, using a "manifest abuse of discretion" standard of review.
State v. Luvene, 127 Wash.2d 690, 706-07, 903 P.2d 960 (1995) (citing State v. Russell, 125 Wash.2d 24, 78, 882 P.2d 747 (1994)).
Here the trial court refused the state's evidence that Vreen told a reporter Rohloff had been the driver. The court reasoned this evidence would only confuse the jury in light of Vreen's stipulation that he was in fact the driver. This was not an abuse of discretion.
The state likewise asserts the trial court erred when it permitted Vreen to present evidence concerning his relationship with his cousin Rohloff. As the Court of Appeals correctly noted, such evidence is relevant because "[a] person can choose to be careless and is less likely to be careless with a loved one in the car." Vreen, 99 Wash.App. at 672, 994 P.2d 905. Nor did Judge Tompkins abuse her discretion when she admitted this evidence.

CONCLUSION
For the foregoing reasons we conclude the erroneous denial of a litigant's peremptory challenge cannot be subject to harmless error analysis when the objectionable juror sits on the panel that convicts the defendant. Such error is per se reversible and we affirm the Court of Appeals on other issues as well. Mr. Vreen's cause is remanded for a new trial consistent with this opinion.
ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.