32 P.3d 292 (2001)
STATE of Washington, Respondent,
v.
Salvador Hernandez RIVERA, Appellant.
No. 43839-5-I.
Court of Appeals of Washington, Division 1.
October 8, 2001.
*293 Thomas Kummerow, Washington Appellate Project, Seattle, for Appellant.
Laura Hayes & Tracey Meek, Whatcom County Pros. Atty., Bellingham, for Respondent.

OPINION PUBLISHED IN PART
KENNEDY, J.
Our State Supreme Court recently ruled that erroneous denial of a litigant's peremptory challenge is never harmless when the objectionable juror actually deliberates. State v. Vreen, 143 Wash.2d 923, 932, 26 P.3d 236 (2001). Salvador Hernandez Rivera's appeal of his first degree murder conviction raises the issue of whether harmless error analysis is appropriate where the trial court fails to accord a criminal defendant the full number of alternate-juror peremptory challenges granted by CrR 6.5, and neither alternate juror actually deliberates. Because the error does not call into question the defendant's constitutional right to a fair trial by an impartial jury and Rivera has not shown prejudice, we conclude that reversal is not required. We also reject Rivera's contention that his right to a public trial was violated when the court closed the courtroom to address a juror's complaints about the hygiene of another juror. We affirm Rivera's conviction.[1]

I
Salvador Rivera and his brother Manuel Rivera were charged by amended information with murder in the first degree and with being armed with a firearm during the commission of the murder. The victim, Matt Garza, died from a gunshot wound to the head fired at close range. The brothers were tried together.
In non-capital cases, the defense is allowed six peremptory challenges to prospective jurors. CrR 6.4(e)(1). A peremptory challenge is an objection to a juror for which there is no reason given but upon which the court shall exclude him or her. Id. When multiple defendants are tried together, each defendant receives an additional peremptory challenge. Id. When the court chooses to pick alternate jurors, the defense is allowed an additional peremptory challenge for each alternate juror to be selected. CrR 6.5. And when multiple defendants are tried together each defendant is allowed an additional peremptory *294 challenge with respect to the alternate jurors. Id.
Here, the trial court properly allowed the co-defendants a total of eight peremptory challenges under RCW 6.4(e)(1). The court determined that two alternate jurors should be selected. But instead of allowing a total of four peremptory challenges (two for each co-defendant) under CrR 6.5, the trial court allowed a total of only two.
At the conclusion of voir dire, after the parties had accepted the jury, the error with respect to peremptory challenges of the alternate jurors was discovered. The court declined to reopen voir dire, and subsequently denied a motion for mistrial based on the error. When the case was sent to the jury, the alternates were excused. They did not participate in deliberations.
During the trial, which otherwise had been open to the public, the trial court conducted a hearing in a closed courtroom, with the parties present, regarding a juror's complaint about a fellow juror's lack of personal hygiene. Rivera did not object to the closure of the courtroom. The trial court did not conduct an on-the-record balancing of the defendants' right to a public trial against the need for the closure before holding the closed hearing.

II

Alternate Juror Challenges
Rivera argues that the error depriving him of one of his peremptory challenges with respect to the selection of the alternate jurors violated his rights under both Wash. Const. art. 1, § 22 and the Sixth Amendment to the United States Constitution.[2] Rivera also contends that the error deprived him of due process under the Fifth and Fourteenth Amendments to the United States Constitution. He contends that automatic reversal is required even though neither alternate juror deliberated, and even though it is undisputed that the jury that rendered the verdict was fair, impartial and unaffected in any way by the error with respect to selection of the alternate jurors.
The Sixth Amendment guarantees a defendant the right to a fair and impartial jury. State v. Williamson, 100 Wash.App. 248, 251, 996 P.2d 1097 (2000). However, it does not guarantee peremptory challenges. State v. Vreen, 99 Wash.App. 662, 668, 994 P.2d 905, aff'd, 143 Wash.2d 923, 26 P.3d 236 (2001). Instead, peremptory challenges are governed by rule and statute. Williamson, 100 Wash.App. at 251, 996 P.2d 1097. Where the jury selection process did not materially depart from the applicable rules, a defendant must show actual prejudice to receive a new trial. Id.
Neither is the right to a certain number of peremptory strikes, or any at all, embodied in the concept of due process. United States v. Annigoni, 96 F.3d 1132, 1150 (9th Cir.1996) (en banc) (Kozinski, J., *295 dissenting) (citing Georgia v. McCollum, 505 U.S. 42, 57, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992)).
Nevertheless, peremptory challenge is a part of our common law heritage, and one that was already venerable in Blackstone's time. United States v. Martinez-Salazar, 528 U.S. 304, 311, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (citing Blackstone, 4 Commentaries 346-48 (1st ed. 1769)). Its purposes include reinforcing a defendant's Sixth Amendment right to trial before an impartial jury, 528 U.S. at 311, 120 S.Ct. 774 (citations omitted), allowing the parties to remove a certain number of jurors who are not challengeable for cause but in whom the parties may perceive bias or hostilitythereby eliminating extremes of partiality on both sidesand to assure the parties that the jury will decide on the basis of the evidence at trial and not otherwise. Annigoni, 96 F.3d at 1137.
The United States Supreme Court has stated, in cases dating back more than a hundred years, that the denial or impairment of the right of peremptory challenge is reversible error. E.g., Lewis v. United States, 146 U.S. 370, 376, 13 S.Ct. 136, 36 L.Ed. 1011 (1892); Harrison v. United States, 163 U.S. 140, 142, 16 S.Ct. 961, 41 L.Ed. 104 (1896), Swain v. Alabama, 380 U.S. 202, 212, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), overruled on other grounds by Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
In Martinez-Salazar, however, the Supreme Court reversed a Ninth Circuit ruling that reversal is a remedy for "loss" of a peremptory used by the defense to rectify the trial court's erroneous refusal to dismiss a juror for cause. The court reasoned that the defendant lost nothing to which he was entitled under federal rule or due process, in that use of a peremptory to excuse a juror who should have been excused for cause is in line with a principle reason for peremptory challengesthe selection of an impartial jury. 528 U.S. at 316-17, 120 S.Ct. 774. Commenting on the automatic reversal rule pronounced in Swain and its predecessors, the high court seemingly sounded a warning that reversal may not be the appropriate remedy for every conceivable impairment of the right of peremptory challenge no matter how slight. 528 U.S. at 317 n. 4, 120 S.Ct. 774.[3]
Our Supreme Court recently ruled that "erroneous denial of a litigant's peremptory challenge cannot be harmless when the objectionable juror actually deliberates[.]" Vreen, 143 Wash.2d at 932, 26 P.3d 236. See also Annigoni, 96 F.3d 1132. In both Vreen and Annigoni, the trial court erroneously denied the defendant a peremptory challenge on Batson grounds, and the objectionable juror remained on the jury that convicted the defendants. The Ninth Circuit has also ruled that a trial court's erroneous denial of a peremptory challenge to an alternate juror who ultimately replaced a member of the jury and rendered a verdict required reversal. Medrano v. City of Los Angeles, 973 F.2d 1499, 1503 (9th Cir.1992).
In United States v. Patterson, 215 F.3d 776 (7th Cir.2000), judgment vacated on other grounds, 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000)[4] the trial court erroneously granted only two extra challenges of alternate jurors, rather than three as required by Fed.R.Crim.P. 24(c)(2), in a multi-defendant trial utilizing a struck-jury pool. *296 The error did not call into question the impartiality of the jury eventually selected. 215 F.3d at 779. Fed.R.Crim.P. 52(a) provides that "`[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.'" 215 F.3d at 781. The Patterson court held the error to be harmless, noting that "when the jury that actually sits is impartial, as this one was, the defendant has enjoyed the substantial right". Id. at 782.
We conclude that like the defendants in Patterson, Rivera's substantial rights with respect to selection of alternate jurors were not impaired by the error here. Our own CrR 7.6(a)(5) provides that the court may grant a new trial when it affirmatively appears that a substantial right of the defendant was materially affected by an irregularity in the proceedings of the court by which the defendant was prevented from having a fair trial. The error here did not prevent Rivera from having a fair trial before a fair and impartial jury. Accordingly, the trial court did not err by denying Rivera's motion for mistrial.

Right to a Public Trial
On one occasion during trial, the court barred the public from the courtroom in order to deal confidentially with a juror's complaint regarding a fellow juror's lack of personal hygiene. Rivera did not object to the closed hearing. The court did not balance competing interests before holding the closed hearing. Rivera contends that the court thereby violated his right to a public trial.
Both the United States and Washington Constitutions protect a criminal defendant's right to a public trial. U.S. Const. Amend. 6; Wash. Const. art. I, § 22. Specifically, the Washington Constitution protects a criminal defendant's right "to have a speedy public trial[.]" Wash. Const. art. I, § 22. The right is "one created for the benefit of the defendant." Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (quoting Gannett v. DePasquale, 443 U.S. 368, 380, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979)). Further, the defendant need show no prejudice resulting from a violation of this right; prejudice is presumed. State v. Bone-Club, 128 Wash.2d 254, 257, 906 P.2d 325 (1995). Failure to object does not act as a waiver. Id.
In order to close the courtroom to the public, the trial court must generally conduct an on-the-record balancing of the defendant's right to a public trial against the need for the closure. Waller, 467 U.S. at 48, 104 S.Ct. 2210; Bone-Club, 128 Wash.2d at 260-61, 906 P.2d 325. A failure to conduct the balancing violates a defendant's right to a public trial under art I, § 22. Id. at 261, 906 P.2d 325. The remedy for a violation under art. I, § 22 is remand for a new trial. Id.
The central aim of the public trial guarantee is to ensure that a defendant is treated fairly by allowing the public to observe the defendant's treatment first-hand. Waller, 467 U.S. at 46, 104 S.Ct. 2210. The public trial right applies to the evidentiary phases of the trial, and to other "adversary proceedings." Ayala v. Speckard, 131 F.3d 62, 69 (2d Cir.1997). Thus, a defendant has a right to an open court whenever evidence is taken, during a suppression hearing, and during voir dire. Id.; Press-Enterprise Co. v. Superior Court of California, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984).
However, the hearing at issue concerned a juror's complaint regarding another juror's hygiene and a discussion about seating one juror away from another juror. This was a ministerial matter, not an adversarial proceeding. It did not involve any consideration of evidence, or any issue related to the trial. The hearing was akin to a chambers hearing or bench conference, and not part of a trial. Opening such conferences to the public would not further the aims of the public trial guarantee. Accordingly, when construing the right of a defendant to be present at trial, courts have concluded that the defendant does not have a right to be present during a chambers hearing or bench conference. State v. Bremer, 98 Wash.App. 832, 835, 991 P.2d 118 (2000). Because the defendant has no constitutional right to be present during a chamber conference, there can be no constitutional right to have the public present.
*297 Whether a chambers hearing is held in chambers or in a closed courtroom is immaterial. The defendant's right to a public trial is not implicated in either situation. Accordingly, the trial court was not required to engage in balancing the merits of closing the courtroom on the record.
We find no violation of Rivera's right to a fair and impartial jury or to a public trial. Accordingly, we affirm his conviction.
The remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports, but will be filed of public record as provided in RCW 2.06.040.
GROSS, J., and AGID, C.J., concur.
NOTES
[1] We treat the remainder of Rivera's contentions in the unpublished portion of this opinion.
[2] Rivera did not provide a Gunwall analysis but the State did. When analyzing a claim based on both the U.S. and Washington constitutions, the first step is to determine whether the State constitution provides more protection that the U.S. constitution. To do so, a court engages in a Gunwall analysis. The six Gunwall factors are: (1) the textual language of the state constitution; (2) significant differences in the texts of parallel provisions of the federal and state constitutions; (3) state constitutional and common law history; (4) preexisting state law; (5) differences in structure between the federal and state constitutions; and (6) matters of particular state interest or local concern. State v. Gunwall, 106 Wash.2d 54, 61-62, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

In this case, all of the Gunwall factors support the conclusion that the state constitution provides the same protection as the federal constitution. Art. 1, § 22 guarantees a defendant the right to a "speedy public trial by an impartial jury". The Sixth Amendment guarantees a defendant the right to a "speedy and public trial, by an impartial jury". There is no significant difference between the texts or the structures of the provisions. (Factors 1, 2, and 5.) Art. 1, § 22 was taken from the federal constitution. (Factor 3.) Washington courts have always relied heavily on federal interpretations of the right to an impartial jury. See, e.g., State v. Hughes, 106 Wash.2d 176, 181, 721 P.2d 902 (1986), State v. Williamson, 100 Wash.App. 248, 251, 996 P.2d 1097 (2000), State v. Evans, 100 Wash.App. 757, 772-74, 998 P.2d 373 (2000). The Gunwall analysis indicates that art. 1, § 22 does not provide any more protection than the Sixth Amendment. Accordingly, we analyze the issue under federal constitutional principles. This is consistent with the briefing of both parties, which relies heavily on federal case law.
[3] The footnote states:

"Relying on language in Swain, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, as did the Court of Appeals below, Martinez-Salazar urges the Court adopt a remedy of automatic reversal whenever a defendant's right to a certain number of peremptory challenges is substantially impaired. Respondent's Brief at 29 (quoting Swain, 380 U.S. at 219, 85 S.Ct. 824 (a "denial or impairment of the right [to exercise peremptory challenges] is reversible error without a showing of prejudice.")). "Because we find no impairment, we do not decide in this case what the appropriate remedy for a substantial impairment would be. We note, however, that the oft-quoted language in Swain was not only unnecessary to the decision in that casebecause Swain did not address any claim that a defendant had been denied a peremptory challengebut was founded on a series of our early cases decided long before the adoption of harmless-error review." Martinez-Salazar, 528 U.S. at 317 n. 4, 120 S.Ct. 774.
[4] The judgment in Patterson was vacated and the case was remanded to the Seventh Circuit for further consideration of a sentencing issue in light of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).