FILED

July 11, 2013

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30034-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DON DOUGLAS LOVELL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Don Lovell, having been charged with five crimes including the

second degree rape of his girl friend, was convicted and sentenced for only the crime of

second degree assault. He appeals that conviction, claiming the court violated his

constitutional rights when it sustained an objection to expert testimony that the girl friend

was an alcoholic and vulnerable to blackouts. The evidence was irrelevant and was

properly excluded. For that reason and because Mr. Lovell raises no viable challenge in

his statement of additional grounds, we affirm.

FACTS AND PROCEDURAL BACKGROUND

At around 4 a.m. one morning in August 2009, Walla Walla police officers

responded to a 911 call reporting a domestic violence incident at an address on East

Chestnut Road. When they arrived, the victim, P.M., hesitantly approached them from

the backyard of an adjacent home, uncertain they were the police. One of the responding officers, Brett Barberich, would later describe her as acting "very frightened" and immediately noticed bruising around her left eye and the collarbone area. Report of Proceedings (RP) at 306. Ms. M. told the officers that her boyfriend, Don Lovell, had beaten her earlier in the evening and that she waited until he fell asleep to leave her home and make a 911 call from the neighbors' home. The officers determined that a valid restraining order was in place restraining Mr. Lovell from contact with Ms. M.

The officers could see that Ms. M. was very intoxicated and upon locating Mr. Lovell in the bedroom of her home, found that he was very intoxicated as well. When asked about what had happened, Mr. Lovell claimed that Ms. M. "went crazy and assaulted him," hitting him in the face and biting him, in response to which he defended himself. RP at 323. He pointed out marks on his torso that appeared to the officers to be consistent with bite marks. Officer Steven Slawson photographed them. The officers nonetheless concluded from Ms. M.'s more extensive injuries that Mr. Lovell was the primary aggressor.

Having made that determination, Officer Barberich transported Mr. Lovell to the county jail. Mr. Lovell was cooperative. Officer Slawson stayed behind and took photographs of Ms. M.

After the officers completed their investigative work, Ms. M. was taken to the hospital by paramedics. Emergency room records reflect that Ms. M.'s chief complaint

2

on arrival was facial bruises and lacerations to her left posterior thigh.[1] The hospital diagnosed Ms. M. with a severe concussion.

In the morning, Ms. M. was interviewed twice by Detective Tracy Klem. Ms. M. told the detective that she had picked up Mr. Lovell the prior evening and driven him to her home for a dinner she had prepared. She told the detective she had been trying to get the restraining order dropped because she and Mr. Lovell wanted to get back together. It was after dinner that their reunion went badly awry and Mr. Lovell beat her up, including by strangling her.

The State originally charged Mr. Lovell with violating a domestic violence (DV) protection order, a class C felony. Approximately 10 days following the incident it amended the information to charge him with two additional crimes against Ms. M.: assault in the second degree-DV, for what it alleged was his strangulation of her, and harassment-DV, for allegedly threatening to kill her. It also charged Mr. Lovell at that time with a felony harassment of Jason Spencer, an off-and-on friend of Mr. Lovell's, based on Ms. M.'s report that Mr. Lovell threatened to kill Mr. Spencer in the course of his August 24 assault of her.

---

[1] Ms. M. later testified that the cut on her thigh was an accident caused when Mr. Lovell threw a glass at a coffee table early in the evening. A piece of the glass had struck her. He apologized and had assisted her in bandaging it.

On September 3, Ms. M. had a doctor's appointment with her primary physician, Dr. Lauri Larson. Ms. M. had seen Dr. Larson earlier in the summer complaining of anxiety and the doctor had been treating Ms. M. with antidepressants. Ms. M. made the appointment for the 3rd to discuss the assault. RP at 391. She told Dr. Larson about her injuries. The doctor asked if sex had occurred that night; Ms. M. said yes, sex had occurred. RP at 286. She told the doctor that it was vaginal intercourse and it hurt terribly. RP at 393. Dr. Larson then conducted a pelvic examination and observed lacerations that the doctor attributed to forcible intercourse. RP at 399-400.

Five days later, on September 8, Ms. M. called Detective Klem and told him for the first time that she had been raped by Mr. Lovell during the course of the assault. The detective asked her to come in to the police department and speak with him, which she did on September 10. In Ms. M.'s later interviews by Detective Klem, she told him Mr. Lovell's assault had begun when she rebuffed his efforts to initiate sexual intercourse. She said Mr. Lovell responded by overpowering her efforts to resist and raping her. Based on this additional information, the State amended its information a third time, in January 2011, charging Mr. Lovell with four crimes against Ms. M.: (1) assault in violation of a protection order, (2) assault in the second degree for strangulation, (3) felony harassment domestic violence, and (4) rape in the second degree. It carried forward the charge of the felony harassment of Jason Spencer.

4

The jury trial took place in April 2011. Evidence presented during the four-day trial included considerable evidence of Mr. Lovell's and Ms. M.'s heavy drinking throughout their tempestuous relationship, including their drinking on the night of the assault. In addition to testifying that Mr. Lovell overpowered and raped her, Ms. M. testified that he demanded that she admit to having an affair with his friend, Mr. Spencer, which she refused to do. She testified that Mr. Lovell then threatened to kill her, kill Mr. Spencer, and kill himself. At other points during the evening, she testified, Mr. Lovell asked her to kill him (Mr. Lovell).

Mr. Spencer was called as a witness by the State. He testified that Mr. Lovell had never threatened him directly. He said he learned from a Walla Walla police officer that Ms. M. said Mr. Lovell threatened to kill him the night he assaulted her but Mr. Spencer discounted the report, testifying that "sometimes people get upset and say things that they don't mean" and "I wasn't that concerned. I thought he was just blowing steam." RP at 302-03. At the close of the State's case, the court granted Mr. Lovell's motion to dismiss the charge of felony harassment of Mr. Spencer.

Throughout the case, Mr. Lovell's lawyer developed evidence of Ms. M.'s and Mr. Lovell's excessive drinking and what he characterized as Ms. M.'s alcoholism, as a context for events on the night of the assault. In the defense case, he also used the evidence of Ms. M.'s drinking to elicit the testimony of a defense expert, Dr. Ronald Fleck, that someone who consumed as much alcohol as Ms. M. admitted consuming

5

would "definitely" have an increased susceptibility to bruising for several reasons: capillary fragility, an increased likelihood of falls and accidents, and nutritional deficiencies. RP at 507.

Mr. Lovell's lawyer finally attempted to question Dr. Fleck about alcoholic blackouts. When the State objected on relevance grounds, the trial court excused the jury and heard argument from the lawyers and Mr. Lovell's offer of proof. The offer of proof was that Dr. Fleck would testify that alcoholics can have no memory of periods when they were unquestionably awake and alert. The memory gaps can be a few seconds, a few hours, or even a few days. Dr. Fleck would also testify that alcoholics suffer another condition called "amnestic syndrome" that is a memory problem caused by a thiamine deficiency. RP at 500. Mr. Lovell argued that Ms. M. had explained certain gaps in her memory to the jury by saying her mind was "a little warped," and that "it is important for the jury to be able to understand these things." RP at 502.

The trial court sustained the State's objection, concluding that evidence concerning blackouts was not relevant or was at best marginally relevant, and that its limited relevance was outweighed by unfair prejudice.

At the conclusion of trial, the jury convicted Mr. Lovell of violation of the restraining order and the second degree assault charged for strangulation of Ms. M. It acquitted him of harassing and raping her. Following the verdict and entry of the judgment and sentence, Mr. Lovell moved for arrest of judgment, arguing that the State's

information failed to include all the necessary elements for the charge of violating of the restraining order. The trial court agreed and vacated conviction on that count.

The court ultimately sentenced Mr. Lovell to 14 months' imprisonment for the second degree assault. He appeals.

## ANALYSIS

Mr. Lovell's brief makes only one assignment of error: he argues that the court violated his constitutional rights to compulsory process and jury trial when it excluded Dr. Fleck's opinion that Ms. M. is an alcoholic and his explanation of alcoholic blackouts and memory loss.

Criminal defendants enjoy a constitutional right to compulsory process, to obtain witnesses in their favor. U.S. CONST. amend. VI, applicable to the states through U.S. CONST. amend. XIV; *Washington v. Texas*, 388 U.S. 14, 17-19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). The right to compulsory process "is in plain terms the right to present a defense [and] a right to present the defendant's version of the facts." *Id.* at 19; *State v. Thomas*, 150 Wn.2d 821, 857, 83 P.3d 970 (2004). The right to present a defense has its limits, however, and "a criminal defendant has no constitutional right to have irrelevant evidence admitted in his or her defense." *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983).

Only relevant evidence is admissible. ER 402. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to

7

the determination of the action more probable or less probable than it would be without the evidence." ER 401. Even if relevant, evidence may be excluded if the court finds it to be unfairly prejudicial, that it confuses the issues, or that it misleads the jury. ER 403.

Mr. Lovell maintains that we must review the trial court's decision to exclude Dr. Fleck's testimony de novo, the standard of review that applies to admissibility decisions under *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923). He argues that the court should have analyzed the evidence under ER 702 through 705 before sustaining the State's objection. But the trial court never reached the question of whether Dr. Fleck's opinions satisfied the requirements of those rules; it excluded the evidence as irrelevant under ER 401, or only marginally relevant and unduly prejudicial under ER 403. Expert opinion testimony must satisfy ER 401 and 403 in addition to the rules included in Title VII of the evidence rules. *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 606-07, 260 P.3d 857 (2011).

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *State v. Vreen*, 143 Wn.2d 923, 932, 26 P.3d 236 (2001). A trial court's evaluation of relevance under ER 401 and its balancing of probative value against its prejudicial effect under ER 403 is accorded a great deal of deference, using a "manifest abuse of discretion" standard of review. *Id.* (quoting *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995)).

There was no evidence that Ms. M.'s delay in reporting the full extent of Mr. Lovell's claimed wrongdoing on the night of the assault was because she suffered from lapses of memory. She testified at trial to many things she recalled from the events of August 23 and 24. She was cross-examined extensively, including about her delayed reporting, which she largely attributed to not initially understanding that she could be "raped" by a boyfriend with whom she had previously had consensual intercourse. She never claimed to have forgotten events. For his part, of course, Mr. Lovell claimed that the criminal conduct never happened.

A careful review of the offer of proof reveals nothing that would have discredited Ms. M.'s testimony as to what she claimed to recall. The offer of proof was that alcoholics suffering from blackouts "essentially don't remember *anything* about what happened." RP at 501 (emphasis added). The offer of proof also characterized blackouts as random and of different duration; Dr. Fleck did not claim to be able to diagnose whether Ms. M. had memories of the assault or whether they were accurate. Mr. Lovell is unable to offer any basis on which Dr. Fleck's testimony that alcoholics can experience blackouts would be relevant. Because the evidence was inadmissible, Mr. Lovell's constitutional rights were not violated.

Mr. Lovell also claims the court erred in sustaining the State's objection to Dr. Fleck's opinion that Ms. M. is an alcoholic. The trial court explained its decision as based in part on the fact that Dr. Fleck never examined Ms. M., unlike other physicians

who had examined her and testified. Also important was the fact that when called as a witness, Ms. M. had testified to the amount of alcohol she regularly consumed in the time frame leading up to the assault and characterized herself as a "functioning alcoholic." RP at 252. We cannot see how labeling Ms. M. an alcoholic would have been helpful to the jury but where she had already applied the label to herself, Dr. Fleck's testimony would have been cumulative and excludable on that basis under ER 403.

Mr. Lovell has not demonstrated any abuse of discretion by the trial court in sustaining the State's objection to the excluded testimony.[2]

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds, Mr. Lovell expresses a number of complaints about his trial but the nature and occurrence of only two asserted errors are sufficiently identified for review. *See* RAP 10.10(c). He complains that his lawyer provided ineffective assistance of counsel in failing to ask that the judge define "strangulation" appropriately and in failing to request instruction on the lesser degree crime of fourth degree assault.

---

[2] Mr. Lovell makes one more essentially unexplained argument: that by sustaining the objection to Dr. Fleck's testimony, the trial court was "vouching" for Ms. M. He relies on decisions holding that an expert who offers an opinion on the guilt of a defendant, directly or inferentially, invades the exclusive province of the finder of fact. The cases he cites do not apply directly or by analogy.

To establish a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007); *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Deficient performance is that which falls "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Prejudice exists if the defendant can show that "there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." *Nichols*, 161 Wn.2d at 8. If a party fails to satisfy one element, a reviewing court need not consider both *Strickland* prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

In evaluating claims for ineffectiveness, we are highly deferential to counsel's decisions and there is a strong presumption that counsel performed adequately. *Strickland*, 466 U.S. at 689-91. Strategic and tactical decisions are not grounds for error. *Id.*; *Reichenbach*, 153 Wn.2d at 130.

A person is guilty of assault in the second degree if he or she assaults another by strangulation. RCW 9A.36.021(1)(g). "Strangulation" is defined by statute to mean "to compress a person's neck, thereby obstructing the person's blood flow or ability to breathe, or doing so with the intent to obstruct the person's blood flow or ability to

11

breathe." RCW 9A.04.110(26). The Washington pattern instructions for criminal trials include a pattern instruction tracking this statutory definition of strangulation. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 35.53 (Supp. 2011). The trial court gave the pattern instruction. Clerk's Papers at 113 (Instruction 12).

Mr. Lovell argues, however, that the *legislative findings* included in Laws of 2007, chapter 79, section 1, which enacted the crime of second degree assault by strangulation, should have been proposed by his lawyer as the proper source of a definition for the jury. The legislative findings refer to the fact that assault by strangulation "may result in immobilization of a victim, may cause a loss of consciousness, injury, or even death," and that strangulation is often knowingly inflicted "with the intent to commit physical injury, or substantial or great bodily harm." *Id.*

Legislative findings are not law on the meaning of strangulation. The statutory definition is. It was the definition given to the jury. There was no error.

Mr. Lovell also argues that the jury should have been instructed on the lesser degree crime of fourth degree assault. A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another. Fourth degree assault is a gross misdemeanor. RCW 9A.36.041.

12

No. 30034-0-III
*State v. Lovell*

Mr. Lovell's theory of the case was that he acted in self-defense. He relied on his own testimony and pointed to photographs taken on the morning of his arrest that depicted the fact that he, too, had been injured. An "all or nothing" strategy is a legitimate trial tactic to achieve an outright acquittal. *State v. Grier*, 171 Wn.2d 17, 43, 246 P.3d 1260 (2011). The record reveals that Mr. Lovell's lawyer represented him zealously, effectively, and largely successfully. That an "all or nothing" defense, reasonable under the circumstances, was not entirely successful does not demonstrate deficient performance.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.

13