# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67926-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| KRISTOPHER PEDERSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 19, 2013 |

SPEARMAN, J. — Any impairment of a party's right to exercise a peremptory challenge constitutes reversible error without a showing of prejudice. Here, the trial court denied Kris Pederson the additional peremptory challenges he was entitled to under CrR 6.5. Because the record does not show Pederson knew of and intentionally and voluntarily relinquished his right to the additional peremptory challenges, we reverse his convictions for second degree assault and felony harassment, and remand for further proceedings.

## FACTS

Kris Pederson was living in the home of Marlene Mirante. After Marlene became ill and was living in a health care facility, Marlene's adult daughter Teresa, Mirante

wanted Kris to move out of her mother's home. Teresa did not live in the home; she lived with her boyfriend Donald Pederson, who is Kris Pederson's brother.

On October 24, 2010, Donald and Teresa argued with Kris at Marlene's home and told Kris he needed to move out. The next day, Kris went to Donald's home. According to Donald, Kris pulled out a gun, lowered his sunglasses, and said "[y]ou're a fucking dead man." Verbatim Report of Proceedings (VRP) 9/14/11 at 49. As Donald ran back into the house, he heard Pederson fire a shot. Id. at 43-44. When the police arrived Pederson had fled.

Two weeks later, on November 7, 2010, Donald received a call from Pederson, who told Donald, "'Don't bother moving, because I'm a very good shot with my high-powered rifle. And before I kill myself, I'm going to take you and Teresa out'." Id. at 76. Pederson was arrested after he was pulled over in eastern Washington. He was intoxicated and had two guns in the car. Pederson gave a recorded statement to detectives. In the statement, Pederson states multiple times that he intended to "scare" his brother with the shot.

The State charged Pederson with four counts: attempted first-degree murder of Donald in the first degree for shooting the gun; first-degree burglary for entering Donald's home after the shooting; felony harassment against Donald; and felony harassment against Teresa. At trial, Pederson advanced a diminished capacity defense based on his serious depression and alcohol consumption. He also requested and received a voluntary intoxication instruction.

2

The jury found Pederson guilty of the lesser offense of second degree assault while armed with a deadly weapon, and of felony harassment against Donald, but found him not guilty of the burglary or felony harassment against Teresa. Pederson appeals.

## DISCUSSION

Speedy Trial. Pederson argues in both his opening brief and his statement of additional grounds that he was deprived of his CrR 3.3 right to a speedy trial because the speedy trial expiration date was originally April 24, 2011, but his trial did not begin until September 1, 2011. We disagree.

On March 14, 2011, defense counsel and the prosecutor jointly requested a continuance. Although Pederson objected, the speedy trial right within the framework of CrR 3.3 is statutory only, and defense counsel may waive it, even "over defendant's objection, to ensure effective representation and a fair trial." State v. Finch, 137 Wn.2d 792, 806, 975 P.2d 967 (1999). Here, the continuance was granted because both defense counsel and the prosecutor had previously scheduled vacations, and because defense counsel indicated she was waiting for forensic evidence and needed additional time to prepare the case. As such, the trial court did not abuse its discretion in moving the trial date to May 9, 2011.

On May 5, 2011, the parties filed another joint motion to continue the trial date. The reason for this joint motion was that Pederson had recently added a voluntary intoxication defense, and was waiting on an expert report. The record shows Pederson was present when this joint motion was presented to the judge and that he agreed to

this continuance. On May 24, 2011, defense counsel moved for another continuance, this time to accommodate preplanned training. Again, the record shows Pederson was present in court when the motion was presented, and that he agreed to the continuance. Given Pederson agreed to these continuances, the trial court did not abuse its discretion in granting them. At this point, the trial was scheduled to start on June 28, 2011.

On June 28, 2011, defense counsel sought another continuance, this time because the defense mental health expert, who examined Pederson, was not available to testify until August 9. The State did not object to the continuance, but asked that the court permit the State to seek another continuance, should the new trial date conflict with the availability of the State's witnesses. Pederson agreed to this continuance, including the State's caveat. The trial court thus did not abuse its discretion in moving the trial date to July 25, 2011.

On July 25, 2011, the State sought to continue the trial date to August 10, 2011 largely because one of the primary detectives was not available to testify. Pederson objected. Given Pederson had previously agreed, however, that the State could seek this continuance should a witness be unavailable, the trial court did not abuse its discretion in granting the continuance. The trial was thus scheduled for August 10 and the speedy trial expiration was September 9.

On August 9, 2011, the State again sought a continuance to accommodate detective availability. Pederson objected. The trial court denied the request to the extent

the State sought to extend speedy trial, but moved the trial date to September 1, still within the September 9 speedy trial expiration. Given that the trial court's ruling did not extend the speedy trial expiration, and that trial began on September 1, the trial court's ruling was not an abuse of discretion.

In sum, the trial court did not abuse its discretion in any of its rulings relating to continuances, and Pederson's right to a speedy trial was not violated. We reject his arguments on this issue.

Admission of firearm evidence. Pederson next argues that the trial court erroneously denied his request to prohibit admission of evidence that he possessed firearms when he was pulled over by the police. He contends admission of this evidence was overly prejudicial, leading the jury to believe he had a propensity toward violent acts. We disagree. Pederson cites State v. Freeburg, 105 Wn. App. 492, 20 P.3d 984 (2001) for the proposition that evidence of weapons is highly prejudicial. But in Freeburg, the defendant's possession of a loaded handgun bore no relevance to the crime, and was instead admitted supposedly as evidence of "flight." Freeburg, 105 Wn. App. at 497. By contrast in this case, Pederson was charged with assault by shooting a gun at his brother, and with felony harassment by threatening to shoot his brother with a "high-powered rifle." A detective testified that the spent bullet found at Pederson's brother's house was "[m]ost likely" from a revolver. 9/15/2011 VRP at 128. The fact that Pederson was arrested with a revolver and a rifle was thus highly probative and related directly to the charged crimes.

5

Additionally, the evidence in Freeburg was that the defendant did not possess the weapons until three years after the crime. Id. at 501. By contrast, the revolver and rifle at issue here were found just two weeks after the assault and one day after the felony harassment. These facts are more similar to State v. Barnes, 158 Wn. App. 602, 243 P.3d 165 (2010), where we held that evidence the defendant possessed a gun two hours after the crime was relevant and admissible, given the charged crime was felony harassment, which requires proof of a "'true threat.'" Barnes, 158 Wn. App. at 610. Under these circumstances, the trial court did not abuse its discretion in admitting evidence that Pederson possessed guns when he was arrested.

To-convict instruction. Pederson next argues that the felony harassment to-convict instruction relieved the State of its burden of proof, in that the instruction did not include a definition of a "true threat," which Pederson contends is an essential element of the crime. We disagree. After Pederson submitted his opening brief, the supreme court decided this very issue and rejected Pederson's argument, holding that the definition of a "true threat" is not an essential element that needs to be included in an information or to-convict instruction. State v. Allen, 176 Wn.2d 611, 294 P.3d 679 (2013). We likewise reject the argument.

Statement of Additional Grounds. In his pro se statement of additional grounds, as well as in numerous letters to the court, Pederson advances an argument involving the recording of his confession to a detective. The gravamen of his argument is that when the State played his recorded confession to the jury, it did not play the whole tape,

but instead played something that was edited and cut short. From this premise, Pederson alleges that the prosecutor perjured herself and that the trial court deprived him of a fair trial by failing to enforce court rules about completeness of evidence.

We conclude his arguments are without merit. As a preliminary matter, Pederson does not describe what he believes was missing from the portion of the tape not played to the jury, nor does he describe how the alleged missing portion prejudiced him. The State's response to Pederson's statement of additional grounds speculates that perhaps the trial prosecutor stopped the tape early so as not to permit the jury to hear Pederson invoke his right to silence or counsel. However, we granted Pederson's request to supplement the record with the recording, and nowhere on the tape does Pederson ask for counsel or invoke his right to silence. In fact, he very clearly waives those rights at the beginning of the interview. Given Pederson has not demonstrated that the State played an edited version of his confession, and given he has not explained his alleged prejudice even if the State had played an edited version, we reject his arguments on this issue.

Examination of revolver. Pederson next argues in his statement of additional grounds that he was deprived of his right to a fair trial when the trial court granted the state's request to have a detective examine the revolver to see if Pederson's story about an accidental firing was plausible. According to Pederson, the trial court was required to appoint a "neutral" expert to examine the gun, as opposed to a witness of the State. We disagree. Pederson provides no authority in support of his argument.

7

Moreover, the only reason the State asked to have the gun examined was because Pederson provided surprise testimony that he had fired the gun accidently by brushing his finger against the trigger. This differed from both Pederson's theories of diminished capacity and voluntary intoxication, and Pederson's confession, wherein he stated he fired the gun for the purpose of scaring his brother.

Evidence of intoxication. Pederson also argues in his statement of additional grounds that the trial court erred by permitting the arresting officer to testify about Pederson's intoxication when he was pulled over. We reject this argument. Not only did Pederson fail to object to this testimony below, it is clear that counsel did not object because it was beneficial to Pederson's theory of the case: i.e., that he could not form the requisite intent because of a diminished capacity resulting from depression and alcohol intake.

Denial of Peremptory Challenges. CrR 6.5 provides that "each party shall be entitled to one peremptory challenge for each alternate juror to be selected." It is undisputed that the trial court here failed to provide the parties with the mandatory additional peremptory challenges for alternate jurors. The only issue here is whether, as Pederson argues, under Washington case law, the erroneous denial of peremptory challenges is not subject to harmless error analysis and requires reversal. We agree with Pederson, reverse his convictions, and remand for further proceedings.

In State v. Evans, 100 Wn. App. 757, 998 P.2d 373 (2000), the trial court rejected the defendant's explanations for seeking to use a peremptory challenge to strike a

8

person of color from the jury, and the juror was empanelled. We held the trial court erred by even asking for a race neutral explanation for the peremptory challenge because no prima facie case of purposeful discrimination existed. Evans, 100 Wn. App. at 768-69. Regarding the remedy for the error, we held that "[a]ny impairment of a party's right to exercise a peremptory challenge constitutes reversible error without a showing of prejudice." Evans, 100 Wn. App. at 774.

Our Supreme Court adopted this analysis in State v. Vreen, 143 Wn.2d 923, 26 P.3d 236 (2001). In that case, the defendant sought to use a peremptory challenge against the only African American on the panel. When the trial court asked defense counsel to provide a nondiscriminatory reason for the challenge, counsel replied that because the juror was a pastor and retired from the military, he may have had an "authoritarian mindset," and may have given more credit to the State's arguments. Vreen, 143 Wn.2d at 926. The trial court found this reason to be inadequate, and the juror sat on the jury that convicted Vreen.

On appeal, the Supreme Court framed the issue as "whether the erroneous denial of a peremptory challenge can ever be harmless when the objectionable juror actually sits on the panel that convicts the defendant." Id. at 931. The court explained that the nature of peremptory challenges makes a harmless error analysis nearly impossible because, "short of taping jury deliberations," there would be no way of knowing how the error affected the outcome of a trial. Id. For this reason, the Supreme Court agreed with our opinion in Evans, and held that "'[a]ny impairment of a party's

right to exercise a peremptory challenge constitutes reversible error without a showing of prejudice." Vreen, 143 Wn.2d at 931 (quoting Evans, 100 Wn. App. at 774).

The State concedes that the erroneous denial of a peremptory challenge is not subject to harmless error analysis. See Response Brief at 20. The State argues, however, that Pederson waived the issue by failing to object. The purpose of the rule requiring a timely objection in order to preserve an error for appeal is to give the trial court an opportunity to correct the error. See State v. Fagalde, 85 Wn.2d 730, 731, 539 P.2d 86 (1975) ("in order to preserve error, counsel must call the alleged error to the court's attention at a time when the error can be corrected"). Here, although both the State and defense counsel attempted to persuade the trial court to provide additional peremptory challenges, the court rule was never mentioned, nor was the case law holding denial of peremptory challenges is reversible error. In fact, defense counsel specifically indicated she had no position as to whether the denial of a peremptory was error: "in my experience, most courts — not to say if it's right or wrong — add additional peremptories[.]" (VRP) 9/8/11 at 19. Under these circumstances, we cannot say that defense counsel called the error to the attention of the trial court.

Nevertheless, we decline to hold that Pederson waived his right to additional peremptory challenges under CrR 6.5. Waiver "ordinarily applies to all rights or privileges to which a person is legally entitled" and "is the intentional and voluntary relinquishment of a known right[.]" Dombrosky v. Farmers Ins. Co., 84 Wn. App. 245, 255, 928 P.2d 1127 (1996); see also Wagner v. Wagner, 95 Wn.2d 94, 102, 621 P.2d

10

1279 (1980) ("Waiver is the intentional relinquishment of a known right"). Waiver is a matter of intention, cannot be inferred from oversight or negligence, and the burden of demonstrating waiver is on the person asserting a right has been waived:

> [Waiver] may result from an express agreement, or be inferred from circumstances indicating an intent to waive. Thus waiver is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved, and the burden is on the party claiming waiver.

Dombrosky, 84 Wn. App. at 255. (Internal citations omitted).

Here, the circumstances do not show Pederson knew of or had any intent to waive his right to additional peremptory challenges. Indeed, the conduct of all parties indicates otherwise. Before jury selection, the trial court indicated the parties would not receive additional peremptory challenges for alternate jurors. When the prosecutor asked why the parties would not receive an additional peremptory for each alternate, the court explained that since the alternate was not being designated until the end of the trial, "we don't know who will be the alternate, so I don't add a peremptory for that. So there'll be six peremptories" for each side, even though 14 jurors would be empanelled. Id. at 7.

Both defense counsel and the prosecutor made it clear they found the procedure troublesome. The prosecutor explained she expected to receive one additional peremptory for each alternate, and let the court know this was the practice of other judges. Id. at 6, 19. Defense counsel asked if the court would at least permit one additional peremptory for the two alternates seated. The court agreed to permit one

11

additional peremptory for the two alternates. When the time came to exercise peremptory challenges, however, there were only 26 potential jurors remaining in veneer after for-cause challenges and hardship dismissals. Defense counsel then asked the trial court to add one additional peremptory by reducing the number of alternates from two jurors to one. The trial court declined. The prosecution asked the court to bring in some additional prospective jurors so that each party would retain the right to strike an alternate. The court again declined. Instead, the court ruled that each side would receive "only six peremptories. I think I have discretion to do that." Id. at 43.

Nothing in this series of events indicates Pederson knew of and then intentionally and voluntarily relinquished his right to additional peremptory challenges. To the contrary, from the repeated attempts to secure additional peremptory challenges, the record makes it clear that Pederson had no intent to voluntarily relinquish them. As such, we reject the State's argument that Pederson waived his rights under CrR 6.5, reverse Pederson's convictions, and remand for further proceedings.

Pederson's correspondence to this court. During the course of this appeal, Pederson has sent numerous letters addressed to this court. We have reviewed his correspondence. Our commissioner addressed several of his requests for relief, including his request for new appellate counsel. Some of his correspondence relates to the substantive issues previously discussed above, and we decline to address them further. To the extent Pederson's remaining correspondence again requests new appellate counsel, we deny that request. Pederson has not shown new counsel was

12

warranted, and the matter is moot given counsel submitted briefing. To the extent

Pederson's correspondence asks this court to supplement the record with the recording

of his interview with detectives, that issue is also moot because we have already

granted his motion to supplement the record with the recording. To the extent

Pederson's correspondence contains other requests for relief, we deny them in light of

our decision.

We reverse Pederson's convictions and remand for further proceedings.


WE CONCUR: