[No. 12784-2-III.   Division Three.   February 1, 1996.]
THE STATE OF WASHINGTON, *Respondent*, v. JERRY ROBERT SHARP, *Appellant*.

---

458

*Robert J. Thompson*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, for respondent.

SWEENEY, C.J. — Excited utterances are an exception to the usual rule precluding the admission of hearsay testimony. ER 803(a)(2). An excited utterance is a statement made while the declarant was still under the stress of excitement caused by an event or condition. *State v. Chapin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992). The question presented here is whether statements made by a victim 30 to 40 minutes after an incident, under question-

ing by a police officer, following conversations by the declarant with his grandparents, fall within the definition of an excited utterance. We conclude that they do not, and reverse and remand for a new trial.

## FACTS

Norman and Phyllis Hubbard are the legal guardians and grandparents of M.J. M.J. is 12 years old. M.J. is mentally and physically handicapped.

On May 14, 1992, the Hubbards took M.J. bowling. At the bowling alley, they gave M.J. money to play video and pinball games. They then left him to bowl. The Hubbards checked on M.J. frequently. One watched M.J. while the other bowled. At some point Mrs. Hubbard realized M.J. was missing. She began to look for him. An employee of the bowling alley noticed M.J. in a car in the parking lot. Another employee went outside to investigate. The employee saw M.J. in a car. He then saw Jerry Robert Sharp close the passenger door to the car and walk to the driver's door. The employee stopped Sharp before he got into the car and asked what he was doing. Sharp replied he was giving M.J. a job.

Mr. Hubbard came outside and took M.J. back into the bowling alley. Mrs. Hubbard also came outside. She noticed that M.J. behaved in a manner which suggested he was excited, nervous or fearful. She confronted Sharp and asked what he was doing. Sharp responded he had hired M.J. to mow his lawn. Mrs. Hubbard challenged the explanation and told bystanders to call the police. After hearing police were on their way, Mr. Sharp left the bowling alley. Mrs. Hubbard had noticed a puppy in Mr. Sharp's car. She returned to the bowling alley and noticed that her husband had "done all the things that were necessary to calm [M.J.] down." Report of Proceedings (RP) at 398.

At trial Sharp explained the events as follows. He had stopped at the bowling alley to use the restroom. When he

left the restroom, M.J. asked him for quarters to play the games. He offered M.J. a job doing yard work. He then returned to the car to get a pencil and paper to give M.J. his name and phone number. M.J. followed him to the car. He denied any intention of leaving the bowling alley with M.J. After M.J. was in the car, Sharp's puppy jumped into M.J.'s lap. He told M.J. he could pet the puppy.

Within 30 to 45 minutes of these events, M.J. was taken to the police station to speak with Officer Jeffrey Taylor. On the way to the police station, M.J. talked to his grandmother. At the police station, Officer Taylor gave M.J. a soda and calmed him down before questioning. RP at 360-61. Officer Taylor testified he felt M.J. had calmed down since he had talked to M.J. at the bowling alley. RP at 372.

At the police station, Mrs. Hubbard told Officer Taylor that M.J. had told her on the way to the police station that Sharp had invited M.J. to come out and pet the puppy. RP at 378-80.

Officer Taylor asked M.J. whether he had told his grandmother "anything else" on the way to the police station. RP at 379. M.J. responded to Officer Taylor's question by saying that Sharp had asked him if he would like to go out to the car to pet his puppy. RP at 379. The jury found Sharp guilty of both attempted second degree kidnapping and unlawful imprisonment.

## DISCUSSION

■■ We note first of all that while deference is usually given to trial court rulings on evidence matters, this is not necessarily true with the excited utterance exception. Recently, our Supreme Court in *State v. Brown*, 127 Wn.2d 749, 903 P.2d 459 (1995) (decided while this case was on appeal) refused such deference:

> While we are sympathetic to the court of appeals' desire to defer to the trial court's evaluation of the complaining witness' credibility and hence ultimately of the tape's reliability, this approach has no place in the excited utterance rule. . . .

As a result, the "key determination is 'whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'"

*Brown*, 127 Wn.2d at 758 (quoting *State v. Strauss*, 119 Wn.2d 401, 416, 832 P.2d 78 (1992)). The events surrounding the utterance here occurred two months before the trial. The trial court, accordingly, is in no better position than we are to evaluate the circumstances surrounding M.J.'s utterance.

■ An excited utterance requires three elements: a startling event or condition, a statement made while under the stress of excitement caused by the event, and the statement must relate to the event or condition. *Chapin*, 118 Wn.2d at 686.

The assumption underlying the excited utterance exception is that the "stress of nervous excitement may be produced which stills the reflective faculties and removes their control."'" *Brown*, 127 Wn.2d at 758 (quoting *Chapin*, 118 Wn.2d at 686). Again, the key inquiry is whether the declarant was still under the stress of events. *Brown*, 127 Wn.2d at 758.

■ Here, M.J. was no longer under the influence of these events. Mrs. Hubbard testified that when M.J. is excited, nervous or fearful he rocks back and forth. RP at 281. M.J. also uses hand motions when he is overjoyed. RP at 289. The testimony here is that M.J. was rocking back and forth when Mrs. Hubbard saw him in Sharp's automobile. RP at 281. But there was no evidence of such conduct during Officer Taylor's questioning. RP at 361.

M.J. had calmed down before the questioning. He had talked to both of his grandparents before the questioning. M.J. responded to leading questions by Officer Taylor and 30 to 40 minutes had gone by before he was questioned. Officer Taylor gave M.J. a soda. He talked to him for a few minutes, which seemed to calm him down. RP at 360-61,

462

363. When Officer Taylor questioned M.J., M.J. would think for a minute and then provide a short answer. RP at 361. There is nothing to support the inference that M.J. was still responding to the stress of this event. This is not, therefore, an excited utterance.

The State argues that M.J.'s youth and developmental disabilities decreased the likelihood he fabricated the statement in such a short time. *See State v. Bryant*, 65 Wn. App. 428, 433, 828 P.2d 1121, *review denied*, 119 Wn.2d 1015 (1992). But the testimony regarding M.J.'s usual conduct suggests just the opposite. M.J. was very impressionable; tried to please everyone, RP at 203-04, 296, 253; and had a tendency to parrot the questions asked of him, RP at 196, 202, 203, 239, 243, 248-49. These characteristics make it more likely that the statement was not an "excited utterance."

M.J. was no longer under the influence of the events at the time of Officer Taylor's questioning.

Reversed and remanded for a new trial.

MUNSON and SCHULTHEIS, JJ., concur.