996 P.2d 1097 (2000)
100 Wash.App. 248
STATE of Washington, Respondent,
v.
Michael Lee WILLIAMSON, Appellant.
No. 17521-9-III.
Court of Appeals of Washington, Division 3, Panel Eight.
April 11, 2000.
*1099 Paul J. Wasson, Spokane, for Appellant.
Lauri M. Boyd, Deputy Prosecuting Attorney, Yakima, for Respondent.
*1098 SWEENEY, J.
In this prosecution for kidnapping and attempted first degree murder, Michael Williamson claims that he was denied a fair trial because the court allowed the State to exercise an unused peremptory challenge after the jury had been sworn and after the State's first witness had started to testify. We conclude that the ruling is subject to the abuse of discretion standard of review and that the trial court did not abuse its discretion by allowing the late peremptory challenge. Mr. Williamson also assigns error to the court's admission of the victim's hearsay statements under the excited utterance exception and the admission of expert testimony on battered woman syndrome. Again, we find no abuse of discretion and affirm.

FACTS
Michael Williamson accosted his ex-wife, Kathryn Wagner, at work. He put his arm behind Ms. Wagner's back and ordered her to get into her car. She then drove them to a campsite at the Ellensburg Canyon. Mr. Williamson repeatedly pointed a handgun at Ms. Wagner. He clicked the gun and said that this was the day she was going to meet her maker. She asked to use the bathroom. Mr. Williamson responded that he would shoot her in the back of the head and drag her body into the weeds. He told Ms. Wagner that he would shoot people and a bird near their car. She purposely dropped two earrings and some personal items at the campsite. They then drove to Mr. Williamson's house.
The following morning Ms. Wagner told Mr. Williamson she had to go to work. She left but went directly to her sister and brother-in-law's house (Sandra and Chuck St. Mary). She tried to attract police by driving 70 to 80 mph. At about 8:30 A.M., she told the St. Marys that she had "just escaped" and explained what happened. She was frightened, upset, tearful, visibly shaken, and in a very agitated state. She spoke in a loud, high-pitched voice. Mr. St. Mary told Ms. Wagner that she had to get help or leave the house.
Mr. St. Mary took Ms. Wagner to the Selah Police Department at approximately 9:20 A.M. She told Sergeant Arnie Belton and Sergeant Ricardo Gutierrez that she followed Mr. Williamson's instructions to avoid getting hurt. She was extremely nervous, frightened, and appeared to have been crying. She kept looking over her shoulder when she entered the police station. She wanted Mr. Williamson put in jail.
Police found the earrings and personal items dropped at the campsite. They also found a .45 caliber automatic handgun in Mr. Williamson's car.
The State charged Mr. Williamson alternatively with first degree kidnapping. The State also charged him with first degree rape and attempted first degree murder. The court dismissed the rape charge without prejudice because Yakima County was not the proper venue.
Following a pretrial hearing, the court agreed to admit Ms. Wagner's statements to her sister and Sergeant Belton as excited utterances under ER 803(a)(2).[1]
Mr. Williamson wanted to enter an Alford[2] plea. After a discussion with the court, he changed his mind. The State intended to call Ms. Wagner as its first witness. But she "left the courthouse in a very distraught state" after Mr. Williamson expressed his *1100 desire to enter a plea. And she could not be found. The State then started with the testimony of the police.
The jury was sworn. After the State's first witness began to testify, a juror told the court that she knew Ms. Wagner. The court refused to remove the juror for cause, but allowed the State to exercise an unused peremptory challenge. Mr. Williamson objected.
The State called Peggy Baken-Weed as an expert on battered woman syndrome. She directs the YWCA Family Crisis Program and runs the Battered Women's Shelter. She explained battered woman syndrome, including the propensity of battered women to recant.
Ms. Wagner recanted her accusations against Mr. Williamson. The defense called no witnesses.
The jury convicted Mr. Williamson of first degree kidnapping and attempted first degree murder. It also found that he was armed with a deadly weapon during both crimes.
The court denied Mr. Williamson's motions for new trial on the kidnapping charge, granted it on the attempted murder charge, and sentenced Mr. Williamson to 119 months for the kidnapping charge and firearm enhancement.

DISCUSSION
Late Peremptory Challenge. The procedure for exercising peremptory challenges in Washington is set out by both court rule, CrR 6.4(e),[3] and statute, RCW 4.44.210.[4]
Mr. Williamson contends that the State's challenge denied him the right to the jury that he chose and therefore a fair trial. See Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).
Our standard of review is abuse of discretion. O.C. Sattinger, Annotation, Peremptory Challenge After Acceptance of Juror, 3 A.L.R.2d 499, 513 (1949 & Supp.1999). We consider whether the jury selected was fair and impartial. People v. Reese, 670 P.2d 11, 13 (Colo.Ct.App.1983). A defendant must show prejudice to justify reversal if the jury selection process substantially complies with the applicable statutes or rules. We will presume prejudice only if there has been a material departure from those statutes or rules. See State v. Tingdale, 117 Wash.2d 595, 600, 817 P.2d 850 (1991); State v. Rempel, 53 Wash.App. 799, 801-02, 770 P.2d 1058 (1989), rev'd on other grounds, 114 Wash.2d 77, 785 P.2d 1134 (1990).
Both the Sixth Amendment of the United States Constitution and article 1, section 22 of our state constitution guarantee a defendant the right to a fair trial by an impartial jury. State v. Latham, 100 Wash.2d 59, 62-63, 667 P.2d 56 (1983). But the "defendant has no right to be tried by a particular juror or by a particular jury." State v. Gentry, 125 Wash.2d 570, 615, 888 P.2d 1105 (1995).
No Washington case addresses the specific challenge herea peremptory challenge after the jury has been impaneled, sworn, and the plaintiff presents its first witness. But neither the court rule nor the statute prohibits a peremptory challenge to an impaneled and sworn juror based on unforeseen circumstances. *1101 CrR 6.4(e); RCW 4.44.210. And the majority of courts grant the trial judge wide discretion in these circumstances. State v. Lupino, 268 Minn. 344, 356, 129 N.W.2d 294 (1964); People v. Harris, 57 N.Y.2d 335, 349-50, 442 N.E.2d 1205, 456 N.Y.S.2d 694 (1982); State v. Womble, 343 N.C. 667, 678, 473 S.E.2d 291 (1996); State v. Freeman, 314 N.C. 432, 437-38, 333 S.E.2d 743 (1985); but see Stevens v. State, 265 Ind. 396, 410, 357 N.E.2d 245 (1976) (holding, without reliance on court rule or statute, that a criminal defendant is not entitled to peremptorily challenge a juror after the jury is sworn).
In Lupino, a juror after being sworn disclosed information that raised concerns about the juror's ability to be impartial. The trial court granted the prosecutor's peremptory challenge. The Minnesota statute governing peremptory challenges provided that challenges shall be made before the juror is sworn, "but the court, for good cause, may permit it to be taken after he is sworn, and before the jury is completed.'" Lupino, 268 Minn. at 356, 129 N.W.2d 294 (quoting Minn. Stat. § 631.26). Relying on Minnesota case law and Minn.Stat. § 631.26, the Minnesota Supreme Court held that the trial court acted within its discretion and, in any event, the defendant failed to show prejudice. Id.
The Colorado court rule is similar to Washington's. After a party accepts a panel of jurors, it "`may thereafter exercise peremptory challenges only as to jurors subsequently called[.]" Reese, 670 P.2d at 13 (quoting former Colo. R.Crim. P. 24(d)(2) (1983)). In Reese, the State accepted a juror. The same juror complained that he would not get paid while on jury duty and therefore could not meet financial obligations. The court refused a challenge for cause. But it allowed the State to reopen voir dire and, over the defendant's objection, granted a peremptory challenge. On review, the court held that the trial court had not abused its discretion and the "method used did not deprive the defendant of a fair and impartial jury[.]" Id.
In Harris, the New York Court of Appeals affirmed a trial court's refusal to allow a peremptory challenge to a sworn juror based on unforeseen circumstances. But in doing so, the court recognized the discretionary nature of the ruling. Harris, 57 N.Y.2d at 349-50, 456 N.Y.S.2d 694, 442 N.E.2d 1205.
The trial court has broad discretion over the jury selection process. Reese, 670 P.2d at 13. The court here substantially complied with both the statute and the rule. Mr. Williamson argues that he was denied "the jury he had selected during the voir dire process," and thereby a fair trial. He does not, however, have the right to be tried by a particular juror or jury. Gentry, 125 Wash.2d at 615, 888 P.2d 1105. Moreover, he has shown no prejudice by the loss of the challenged juror or the substitution of another. Tingdale, 117 Wash.2d at 600, 817 P.2d 850; Rempel, 53 Wash.App. at 801-02, 770 P.2d 1058; see Watson v. State, 291 Ark. 358, 371, 724 S.W.2d 478 (1987); Reese, 670 P.2d at 13; State v. Verrett, 467 So.2d 1290, 1291 (La.Ct.App.1985); Lupino, 268 Minn. at 356, 129 N.W.2d 294.
Excited Utterances. Mr. Williamson contends that Ms. Wagner's hearsay statements were not excited utterances. He argues that Ms. Wagner made the oral statements in response to specific questions by or under family or police direction. He also complains that he was denied the right to confront Ms. Wagner because her hearsay statements preceded her testimony.
Mr. Williamson's concerns must be put in context. The State intended to call Ms. Wagner first. Mr. Williamson indicated he would plead guilty. Ms. Wagner then left the courthouse. Mr. Williamson changed his mind. But Ms. Wagner was gone.
The standard of review is again abuse of discretion. Unfortunately, application of this standard to the excited utterance exception has become a bit clouded by two recent decisions, one by the Supreme Court, State v. Brown,[5] and one from this Division, State v. Sharp.[6]
*1102 In Brown, the Supreme Court unanimously reversed the decision of a trial judge to admit 911 tapes, under the excited utterance exception, noting:
It is thus apparent that T.G.'s testimony that she had the opportunity to, and did in fact, decide to fabricate a portion of her story prior to making the 911 call renders erroneous the trial court's conclusion that the content of her call was admissible as an excited utterance. Therefore, the 911 tape is to be excluded on remand.
State v. Brown, 127 Wash.2d 749, 759, 903 P.2d 459 (1995). This conclusion followed its statement of the scope of review:
While we are sympathetic to the Court of Appeals' desire to defer to the trial court's evaluation of the complaining witness' credibility and hence ultimately of the tape's reliability, this approach has no place in the excited utterance rule....
... [T]he "key determination is `whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'"
Id. at 758, 903 P.2d 459 (quoting State v. Strauss, 119 Wash.2d 401, 416, 832 P.2d 78 (1992)).
After Brown, and based in part on that decision, we decided Sharp. There, the trial court admitted, under the excited utterance exception, the statement of a mentally and physically handicapped 12-year-old boy. It did so despite testimony by witnesses that the boy had calmed down before being taken to the police station and before questioning. We concluded, citing Brown, and would still conclude, that the statement did not fall within the excited utterance exception to the hearsay rule.
Our reading of Brown, in Sharp, has been criticized recently by both Divisions One[7] and Two.[8] And properly so.
Simply reciting "abuse of discretion" as a standard of review is not helpful. At some point, the judge makes a decision outside the range of acceptable discretionary choices and thereby abuses his or her discretion. The range of those discretionary choices is, therefore, a question of law. For example, on one end, the judge abuses his or her discretion when findings of fact supporting the discretionary decision are not supported by the evidence. And on the other end, the judge abuses his or her discretion if the discretionary decision is contrary to law. Certainly, where the trial judge is required to assess body language, hesitation, or lack thereof, manner of speaking, and all the other intangibles that go into the evaluation which cannot be reflected on a written record, the trial judge is entitled to absolute deference. State v. Karpenski, 94 Wash. App. 80, 103, 971 P.2d 553 (1999).
For the excited utterance exception, the trial judge must make a preliminary finding based on a preponderance of evidence that the declarant was still under the influence of the event at the time the statement was made. ER 104(a); Karpenski, 94 Wash.App. at 102-03, 971 P.2d 553. Although not articulated well, we concluded in Sharp that the trial judge's finding was not supported by the evidence. We therefore reversed. State v. Sharp, 80 Wash.App. 457, 461, 909 P.2d 1333 (1996). We reversed because the trial court's choice fell beyond the range of acceptable choices. And, although not clearly articulated, that appears to be the Supreme Court's rationale in Brown. Brown, 127 Wash.2d at 757-58, 903 P.2d 459.
Under the excited utterance exception to the hearsay rule, an out-of-court statement is admissible if it relates to "a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2); State v. Briscoeray, 95 Wash.App. 167, 173, 974 P.2d 912, review denied, 139 Wash.2d 1011, 994 P.2d 848 (1999). An excited utterance requires three preliminary factual findings: (1) a startling event or condition, *1103 (2) a declarant under the stress of a startling event or condition, and (3) a connection to the startling event or condition. Sharp, 80 Wash.App. at 461, 909 P.2d 1333. Here, the question is whether Ms. Wagner made the statements while still under the stress of the event.
Spontaneity is crucial. Briscoeray, 95 Wash.App. at 173, 974 P.2d 912. The trial court should consider the passage of time between the startling event and the utterance. But the passage of time alone is not dispositive. Strauss, 119 Wash.2d at 416-17, 832 P.2d 78. Other considerations include the declarant's emotional state and whether the declarant had an opportunity to reflect on the event and fabricate a story. Briscoeray, 95 Wash.App. at 173-74, 974 P.2d 912. The statement need not be completely spontaneous and may be in response to a question. Johnston v. Ohls, 76 Wash.2d 398, 406, 457 P.2d 194 (1969).
A later recantation does not disqualify the statement as an excited utterance. Briscoeray, 95 Wash.App. at 173, 974 P.2d 912. But if the witness had an opportunity to, and did fabricate a lie after the startling event and before making the statement, the statement is not an excited utterance. Brown, 127 Wash.2d at 757-58, 903 P.2d 459.
Here, the court heard from Ms. Wagner, Sergeant Belton, Sergeant Gutierrez, and Ms. St. Mary. It found that Ms. Wagner's oral statements to Ms. St. Mary and Sergeant Belton were excited utterances. ER 803(a)(2).
Ms. St. Mary testified that Ms. Wagner arrived at her house at 8:00 or 8:30 A.M. after driving 70 to 80 mph. Ms. Wagner was upset, highly emotional, and in shock. Report of Proceedings at 187-90.
Sergeant Belton asked Mr. St. Mary to drive Ms. Wagner to the police station. Report of Proceedings at 127, 196-97. They arrived at the police station at 9:20 A.M. Ms. Wagner appeared to have been crying, and was very fearful, emotional, nervous, and excited. She continued to look over her shoulder and thanked Sergeant Belton for locking the door. She asked Sergeant Belton to guarantee that Mr. Williamson would be arrested before she gave a statement. Report of Proceedings at 128-30, 170.
Ms. Wagner faced a startling event, the kidnapping. Her statements were a spontaneous recitation of that event. Sharp, 80 Wash.App. at 461, 909 P.2d 1333. She made the statements right after she was able to break free from her kidnapper. Briscoeray, 95 Wash.App. at 173-74, 974 P.2d 912. Her appearance was highly emotional. She acted as if she was afraid of Mr. Williamson. Id. She made her statements while she was still under the influence of the kidnapping. The statements here were not the result of fabrication, intervening actions, or the exercise of choice or judgment. Id. at 173, 974 P.2d 912; Sharp, 80 Wash.App. at 461, 909 P.2d 1333.
These facts amply support the trial court's finding that these statements were "excited utterances."
The conviction is affirmed.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
KURTZ, C.J., and BROWN, J., concur.
NOTES
[1] Hearsay is admissible if it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2).
[2] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[3] "After prospective jurors have been passed for cause, peremptory challenges shall be exercised alternately first by the prosecution then by each defendant until the peremptory challenges are exhausted or the jury accepted. Acceptance of the jury as presently constituted shall not waive any remaining peremptory challenges to jurors subsequently called." CrR 6.4(e)(2).
[4] "The jurors having been examined as to their qualifications, first by the plaintiff and then by the defendant, and passed for cause, the peremptory challenges shall be conducted as follows, to wit:

"The plaintiff may challenge one, and then the defendant may challenge one, and so alternately until the peremptory challenges shall be exhausted. The panel being filled and passed for cause, after said challenge shall have been made by either party, a refusal to challenge by either party in the said order of alternation, shall not defeat the adverse party of his full number of challenges, but such refusal on the part of the plaintiff to exercise his challenge in proper turn, shall conclude him as to the jurors once accepted by him, and if his right be not exhausted, his further challenges shall be confined, in his proper turn, to talesmen only." RCW 4.44.210.
[5] 127 Wash.2d 749, 757-59, 903 P.2d 459 (1995).
[6] 80 Wash.App. 457, 460-61, 909 P.2d 1333 (1996).
[7] State v. Briscoeray, 95 Wash.App. 167, 171-73, 974 P.2d 912, review denied, 139 Wash.2d 1011, 994 P.2d 848 (1999).
[8] State v. Sunde, 98 Wash.App. 515, 519-21, 985 P.2d 413 (1999).