IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32873-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CECILY ZORADA MC FARLAND, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Cecily McFarland challenges her convictions and sentences for

first degree burglary, ten counts of theft of a firearm, and three counts of unlawful

possession of a firearm. We conclude that the trial court did not abuse its discretion in

the trial rulings and did not err at sentencing. Likewise, the record does not support a

contention that trial counsel erred. Therefore, we affirm.

FACTS

Ms. McFarland once dated and lived with Derek Sterling at the home of his

parents, the Legaults. That relationship ended and she began dating Chad Faircloth. On

the evening of the day she moved in with the Faircloth family, June 21, 2014, Ms.

McFarland and Chad Faircloth went to the Legault home. Over multiple vehicle trips

extending to the early morning of June 22, the two took a number of items from the

home, including firearms.[1] Ms. McFarland told the Faircloths that she was retrieving her personal property. She also texted Derek Sterling that evening and told him she was at his parents' home.

When he awoke on the 22nd, Mr. Legault discovered that his television, Blu-ray player, eighteen weapons, ammunition, alcohol, and numerous other items, including checkbooks belonging to the Legaults, were missing. Around 8:00 a.m. that morning, a deputy sheriff stopped a vehicle driven by Ms. McFarland on suspicion of DUI. Chad Faircloth was her passenger. She took a portable breath test that reported she had no alcohol on her breath; she was released after a blood sample was taken to check for suspected narcotics impairment.

Later that day law enforcement searched the Faircloth home and retrieved property taken from the Legault home, including ten firearms. Chad Faircloth and Ms. McFarland were arrested and charged with various offenses. In addition to the previously mentioned 14 felonies, the State also charged Ms. McFarland with one count of second degree trafficking in stolen property. Her case proceeded to jury trial.

Prior to jury selection, Ms. McFarland made a number of motions in limine, including one prohibiting the State or its witnesses from referring to the complaining witness as the victim. The court denied this motion. During the trial one of the deputies

---

[1] On one trip around 6:00 a.m., Jeffrey Faircloth drove the younger couple to the house and waited in his vehicle while the two retrieved some items.

referred to Mr. Legault as the victim. The prosecutor also used the word victim when questioning the deputy. In sum, the word "victim" was used in front of the jury around six times.

The State offered a "bodycam" video of Ms. McFarland's arrest into evidence. Ms. McFarland made a number of objections to the video based on relevancy and prejudice, including that it showed her in handcuffs, referenced that she had served time in jail, included a portion where the deputy was defining the crime of burglary, and included a discussion about Ms. McFarland's drug use. She argued that the only thing probative in the whole ten-minute video was her denial of involvement in any burglary. The State conceded that "some of the stuff probably shouldn't come in," including what constitutes burglary, and the fact that she just got out of jail.

Originally, the prosecutor sought to admit about ten minutes of the video.[2] The trial court, however, ordered that a five minute portion of the video be cut to remove any reference to the fact that she had been in jail. The remaining video was a little less than six minutes in length. Ex. 44. Ms. McFarland still objected on the grounds that it was prejudicial and mostly lacking in probative value. The trial court, however, felt that it was important to show her demeanor. Believing that it was "impossible to sanitize this

---

[2] The original video is not part of the record on appeal.

completely," the trial court admitted this truncated video and played it for the jury. Verbatim Report of Proceedings (VRP) at 213-214, 216.[3]

The video begins with a handcuffed Ms. McFarland in the house. Ex. 44 at 11 sec. to 15 sec. Then, a deputy took her outside and asked her to sit down in front of the house. *Id.* at 15 sec. to 35 sec. Ms. McFarland was belligerent and appeared possibly intoxicated or under the influence of a drug. *Id.* at 43 sec. to 1 min., 3 sec. ("I want to know what the hell is going on," and "this is fucking crazy and bullshit"). Then, Ms. McFarland asked about burglary. *Id.* at 1 min., 14 sec. to 1 min., 17 sec. ("I don't know why it's a burglary, burglary for what? I didn't burglary [sic] anything"). The deputy responded that another officer soon would explain that to her. *Id.*

About two minutes went by where nothing happened other than occasional disgruntled comments from Ms. McFarland. *Id.* at 1 min., 17 sec. to 3 min., 13 sec. Then the conversation turned back to burglary. *Id.* at 3 min., 12 sec. to 3 min., 21 sec. ("Burglary, what the fuck you mean burglary, I was here the whole time except when I went out to go get my clothes.") The deputy then explained what burglary means. *Id.* at 3 min., 21 sec. to 3 min., 32 sec. (correcting Ms. McFarland "you don't have to break in . . . it means being any place, or entering or remaining unlawfully in a building while committing another crime.") Ms. McFarland asked where this burglary happened, and the

---

[3] VRP denotes the consecutively numbered transcripts covering the trial, while VTP will be used to denote the transcript of the pretrial and posttrial proceedings.

deputy said he did not know. *Id.* at 3 min., 33 sec. to 3 min., 37 sec. Ms. McFarland then reiterated that she did not leave at all last night except to go get her clothes. *Id.* at 3 min., 37 sec. to 3 min., 41 sec. The deputy then said, they're "probably talking about last night, where were you last night?" and Ms. McFarland states, "I was here." *Id.* at 3 min., 41 sec. to 3 min., 48 sec.

In the final portion of the video, the deputy explained to Ms. McFarland that she was detained. He then asked her if her rights had been read to her, and when she did not respond, he proceeded to read the *Miranda*[4] rights. *Id.* at 4 min. to 5 min., 8 sec. Ms. McFarland was belligerent while the deputy read the *Miranda* rights, quoting the right to remain silent back to him. *Id.* at 4 min., 30 sec. to 4 min., 45 sec. At the end, she said she understood the rights he read to her. *Id.* at 5 min., 5 sec. to 5 min., 10 sec.

The deputy then explained the situation to her as he saw it. *Id.* at 5 min., 23 sec. to 5 min., 33 sec. ("As far as I know there was a burglary that occurred last night, and apparently somehow your name or some video or fingerprints or . . . I don't know, something came up that's leading us back to you"). Ms. McFarland responded, "What the hell, I was here the whole fucking all last night." *Id.* at 5 min., 35 sec. Right after that statement, the video ended.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

The State dismissed the trafficking charge during trial. The defense did not put on a case. During closing arguments, both the State and defense referenced the video. The defense theory of the case was that small, weak Ms. McFarland was a bystander to the theft of the guns by the Faircloths. Nonetheless, the jury ultimately found Ms. McFarland guilty of all 14 remaining charges: three counts of unlawful possession of a firearm, ten counts of theft of a firearm, and the first degree burglary count.

At sentencing, the court calculated Ms. McFarland's offender score at two on the ten firearm theft counts based on her two prior adult felony convictions.[5] The offender score was calculated at three on the remaining four counts, with the burglary offense counting as one point on the unlawful possession charges and the unlawful possession charges collectively adding one point to the burglary scoring. Clerk's Papers (CP) at 214-215. The defense agreed with the calculation of the standard ranges and did not dispute the scoring. VTP at 22-23. Defense counsel asked for low end sentences, noting the harshness of the resulting sentence. VTP at 24. The trial court agreed that the sentence was harsh, but stated that judges "apparently don't have much discretion here." VTP at 25. The court then imposed a mid-range term on the burglary count and consecutive low-end sentences totaling 237 months on the remaining charges. VTP at 25-26; CP at 216.

---

[5] Ms. McFarland actually had three prior convictions, but two of them were considered the same criminal conduct and counted as one offense. Clerk's Papers at 214.

Ms. McFarland timely appealed to this court.

ARGUMENT

This appeal challenges the trial court's ruling on the "victim" nomenclature and the admission of the bodycam video of the defendant, as well as the calculation of the offender score and the standard range sentence. We address those four matters in the order stated.

*"Victim" Reference*

Ms. McFarland challenges the court's denial of her pre-trial motion to prohibit witnesses from referring to the Legaults as victims. While we believe that there are situations where such testimony would be erroneous, this was not one of those cases. The trial court did not abuse its discretion.

As a general rule, trial judges have broad discretion in their evidentiary rulings. *State v. Sharp*, 80 Wn. App. 457, 460, 909 P.2d 1333 (1996). Accordingly, we review rulings on motions in limine for abuse of discretion. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

It is improper for a witness to testify that a defendant is guilty. *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Ms. McFarland argues that use of the word "victim" is the equivalent of expressing the opinion that she is guilty. It is not. As with

many words, "victim" has several connotations that are dependent on the context in which the word is used. Someone who has been shot is regularly referred to as a victim by law enforcement and medical professionals without regard to whether the shooting is justified. A person who has been swindled of all her savings is a victim of theft or fraud. Law enforcement frequently refers to the complainant in a criminal case as the victim. The word simply serves as a designation that places a person in a particular category.

Nonetheless, the word could on some occasions serve as an opinion. Other states have held in certain circumstances that using the term victim is not permissible. The Vermont Supreme Court explained that "where the commission of a crime is in dispute and the core issue is one of the complainant's credibility, it is error for a trial court to permit a police detective to refer to the complainant as the 'victim.'" *State v. Wigg*, 2005 VT 91, 179 Vt. 65, 889 A.2d 233, 236. Other jurisdictions agree with this determination. *See State v. Devey*, 2006 UT App. 219, 138 P.3d 90, 95-96 (holding it may have been error to deny a motion in limine prohibiting the State and witnesses from referring to the complaining witness as a "victim" when the existence of a crime was at issue); *State v. Albino*, 130 Conn. App. 745, 762, 24 A.3d 602 (2011) (holding that "in a case where there is a challenge as to whether a crime occurred, the repeated use of the words victim, murder and murder weapon is improper"); *Jackson v. State*, 600 A.2d 21 (Del. 1991) (recognizing that "victim" may be appropriate when there is no doubt that a crime was committed and identity was at issue); *Veteto v. State*, 8 S.W.3d 805, 816-817 (Tex. App.

2000), *abrogated on other grounds by State v. Crook*, 248 S.W.3d 172 (2008) (reference to child as "the victim" instead of "the alleged victim" could lend credence to her testimony that the assaults occurred).

The only Washington case to address this issue in a published opinion did so in an entirely different context. *State v. Alger*, 31 Wn. App. 244, 640 P.2d 44 (1982). *Alger* was a prosecution for statutory rape. The court read the jury a stipulation of the parties concerning the defendant's age and the fact that he had not been married to "the victim." *Id.* at 248-249. On appeal, the defendant challenged the reference as a judicial comment on the evidence in violation of our state constitution. *Id.* at 249. Without deciding whether it was error, the court determined that the single reference did not prejudice the defendant. *Id.*

We believe that in some circumstances it could be error for a witness to use the word "victim" to express an opinion or for a judge to use the word to refer to a disputed fact. That does not justify a blanket prohibition on use of the word. More to the point, there was no error in using the word in this case. There was no dispute that the Legaults were burglarized. The defense theory simply was that Ms. McFarland was not actively involved. Use of the word "victim" to refer to the Legaults was not error in this context.

The trial court did not abuse its discretion by denying the motion in limine.

*Video of Defendant*

Ms. McFarland contends that the trial court erred in permitting use of the reduced six minute video of her arrest. While we share her concerns that more of the video was shown than was necessary, we again conclude that the trial court did not abuse its discretion in allowing the exhibit into evidence.

As mentioned previously, trial courts have broad discretion in admitting evidence. *Sharp*, 80 Wn. App. at 460. Accordingly, we review those rulings for abuse of discretion. *State v. Slocum*, 183 Wn. App. 438, 449, 333 P.3d 541 (2014).

Ms. McFarland challenges the video exhibit on three grounds. She argues that it was not relevant, a deputy's discussion of the elements of the crime of burglary was improper, and the exhibit was unduly prejudicial. We look at those arguments in the order stated.

The video was relevant because it included Ms. McFarland's denial of involvement in the crime, a facet of the recording that she agreed was relevant. The State offered that evidence to show her consciousness of guilt. That type of evidence long has been admissible. *State v. Bruton*, 66 Wn.2d 111, 112-113, 401 P.2d 340 (1965). The statement also tied the defense down to theories consistent with her alleged non-involvement with the incident. Thus, that aspect of the video was relevant and admissible. ER 401, 402.

More problematic is Ms. McFarland's second complaint that the discussion of the elements of burglary discussion was improper. The prosecutor conceded at trial that it

10

should not be admitted. Nonetheless, the discussion was part and parcel of the defendant's discussion and denial of involvement in the crime. Statements she made prompted the deputy to correct her understanding of what constituted a burglary.[6] As the trial court acknowledged, it was not possible to completely sanitize the video. VRP 213-214.

The record does not establish abuse of discretion. The deputy's discussion of the elements of the offense was limited and also was consistent with the court's later instruction to the jury. The discussion was not offered to the jury as a statement of law for their consideration. It simply put the denial of involvement in its proper context. Finally, the court's written instructions repeatedly reminded jurors that it must accept the law as contained in the written instructions. CP at 135, 136. Given all, we cannot say the court erred in its decision. There was minimal prejudice from this discussion and it did relate to relevant statements made by the defendant.

Finally, Ms. McFarland does complain that the redacted video was unduly prejudicial by showing her in handcuffs[7] and showing her demeanor over several minutes

---

[6] The exchange in question began with Ms. McFarland, stating: "Burglary, what the f--- actually you mean burglary. I've been here the whole time except when I went out to go get my clothes." Deputy Linscott asks if she understood "what burglary actually is?" She responded, "Yeah, when you're breaking and entering." The deputy answered back: "Eh, you don't have to break in. It means being in any place, or entering or remaining unlawfully in a building while committing another crime." Ex. 44 at 3 min., 13 sec. to 3 min., 34 sec.

[7] The trial court offered to give a limiting instruction concerning the handcuffs. However, no limiting instruction was requested. VRP at 214.

11

while she was not being questioned or making any statements relevant to the proceedings. The trial court excised nearly six minutes of the video, but left in this evidence of her demeanor, believing it to be important for the jury to consider. While we question whether the value of that evidence was outweighed by its prejudice, we acknowledge that this was the trial court's decision to make. In large part the demeanor evidence was cumulative to that shown in the admittedly relevant portions of the video. "The admission of evidence which is merely cumulative is not prejudicial error." *State v. Todd*, 78 Wn.2d 362, 372, 474 P.2d 542 (1970). We conclude that Ms. McFarland has not shown that the court abused its discretion in its editing of the video.

The admission of the redacted video in exhibit 44 was not error.

*Offender Score Calculation*

Ms. McFarland also challenges the offender score calculation, arguing that all of the offenses should have been considered the same criminal conduct. Because this argument fails for several reasons, it is discussed summarily.

The governing principle is found in RCW 9.94A.589(1)(a). When imposing sentence under that subsection, courts are required to include each other current offense in the offender score unless one or more of those offenses constitute the same criminal conduct, in which case they shall be "counted as one crime." The statute then defines that particular exception to the scoring rule: "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are

12

committed at the same time and place, and involve the same victim." *Id.* It is the defendant's burden to establish that offenses constitute the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 540-541, 295 P.3d 219 (2013).

Ms. McFarland did not raise this claim to the trial court. In fact, her counsel, under questioning by the trial judge, conceded that the score and range were correct. Since she failed to raise this challenge in the trial court, it is waived. *State v. Nitsch*, 100 Wn. App. 512, 520-521, 997 P.2d 1000 (2000). She never attempted to meet her burden under *Graciano*.

A second reason that the argument fails is that it does not satisfy the statutory test. Among the statutory factors is a requirement that the offenses involve the same victim. While the burglary and theft counts could constitute the same criminal conduct, and were in fact so treated by the trial court, the unlawful possession counts could not constitute the same conduct with the burglary charge because the victims were different. The Legaults were the victims of the burglary and theft counts. However, the public at large is the victim of an unlawful firearm possession charge. *See State v. Haddock*, 141 Wn.2d 103, 110-111, 3 P.3d 733 (2000).

A third reason that the argument could fail is the burglary anti-merger statute, RCW 9A.52.050. This statute gives trial courts the authority to treat burglary offenses separately even when the underlying crime would otherwise constitute the same criminal conduct. *State v. Lessley*, 118 Wn.2d 773, 781-782, 827 P.2d 996 (1992).

13

Finally, application of the same criminal conduct standard is problematic with respect to the scoring of the theft and firearm offenses. The same criminal conduct exception is found in RCW 9.94A.589(1)(a) and by its terms applies only to offenses scored under that subsection. *See* first sentence (expressly exempting subsections (b) and (c) from its application). In this case, the only offense to which the same criminal conduct exception could have been applied was to the burglary count. However, that standard has no application to the scoring of the theft and unlawful possession counts that were sentenced under subsection (c). Thus, while the theft counts could be the same criminal conduct as the burglary, the burglary could not be the same criminal conduct as the theft counts.[8]

For all of these reasons, the offender score argument is without merit.

*Exceptional Sentence*

Lastly, Ms. McFarland contends that the trial court erred in imposing a standard range sentence because it did not recognize it had any discretion to do otherwise. She attacks this issue on both statutory and ineffective assistance rationales. For differing reasons, both of them fail.

---

[8] It appears the scoring of the theft counts as "2" instead of "3" was error, although it inured to the benefit of Ms. McFarland. As the State committed the same error in its briefing to the trial court, it cannot complain here.

For over three decades since its original enactment, the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, has always stated that a "sentence within the standard sentence range . . . shall not be appealed." RCW 9.94A.585(1). Accordingly, an offender who receives a standard range sentence, such as Ms. McFarland, cannot challenge the sentence on appeal. Instead, any challenge that might exist is to the process by which the sentence was imposed. A challenger must show that the judge failed to consider something he was required to consider or otherwise refused to follow a mandatory process. *State v. Mail*, 121 Wn.2d 707, 712, 854 P.2d 1042 (1993). For instance, the categorical refusal to consider an alternative sentence is a failure to comply with the procedural requirements of the SRA. *State v. Grayson*, 154 Wn.2d 333, 342-343, 111 P.3d 1183 (2005). Ms. McFarland argues that the trial court failed to recognize that it had power to impose an exceptional sentence, likening the case to *In re Mulholland*, 161 Wn.2d 322, 166 P.3d 677 (2007) (reversing trial court for failure to consider an exceptional sentence when sentencing multiple serious violent felonies under RCW 9.94A.589(1)(b)).

Ms. McFarland's initial problem here is that she never asked the trial judge to impose an exceptional sentence. Her counsel made no such request at sentencing and there is no sentencing memorandum or other writing suggesting the possibility. Likewise, the prosecutor's sentencing brief does not address the topic. It simply was not

before the court. Accordingly, the judge cannot have erred for failing to do something he was never asked to do.[9]

Alternatively, Ms. McFarland argues that her counsel rendered ineffective assistance by failing to seek an exceptional sentence. Again, very familiar standards govern review of this contention. The Sixth Amendment to the United States Constitution guarantees the effective assistance of counsel. Counsel's failure to live up to those standards will require a new trial when the client has been prejudiced by counsel's failure. *State v. McFarland*, 127 Wn.2d 322, 334-335, 899 P.2d 1251 (1995). In evaluating ineffectiveness claims, courts must be highly deferential to counsel's decisions. A strategic or tactical decision is not a basis for finding error. *Strickland v. Washington*, 466 U.S. 668, 689-691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts apply a two-prong test, evaluating whether or not (1) counsel's performance failed to meet a standard of reasonableness and (2) actual prejudice resulted from counsel's failures. *Id.* at 690-692. When a claim can be disposed of on one ground, a reviewing court need not consider both *Strickland* prongs. *Id.* at 697; *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

---

[9] It is in this context that we read the judge's "no discretion" comment to mean that there was nothing presented to him other than a standard range sentence, leaving the judge little room to maneuver.

16

The first *Strickland* prong is dispositive here as Ms. McFarland has not demonstrated that her counsel erred. Specifically, she has not shown that a basis existed for an exceptional sentence in her case that counsel unreasonably failed to pursue. For instance, there was evidence in the record that Ms. McFarland had used narcotics around the time of the burglary. This record does not reflect whether she was sufficiently impaired that she was unable to appreciate the wrongfulness of her actions. *See* RCW 9.94A.535(1)(e). We simply do not know what efforts the defense made to investigate that mitigating factor or some other mitigating factor that might have been applicable.

Ms. McFarland suggests now that an exceptional sentence was appropriate under RCW 9.94A.535(1)(g). That provision allows an exceptional sentence when the "operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter." She likens this case to *Mulholland* where the court applied the mitigating factor to a sentence imposed under RCW 9.94A.589(1)(b). However, there are two factual differences between this case and *Mulholland*.

First, sentencing here was under subsection .589(1)(c), not (1)(b) as in that case. While the reasoning in *Mulholland* might well also apply to subsection (1)(c), Ms. McFarland has presented no published authority indicating that any court has ever done so before, thus suggesting that her counsel did not err by failing to make the argument. A problem with comparing the two subsections is that RCW 9.41.040(6) expressly states

that "notwithstanding any other law," an offender committing unlawful possession of a firearm or theft of a firearm "shall serve consecutive sentences for each of the felony crimes of conviction listed in this subsection." On its face, that provision appears to prohibit any exceptional sentence that would alter the consecutive *ordering* of the sentences, but does not otherwise prohibit use of the exceptional sentence power in these cases. Thus, it would not prohibit the *reduction* of each of the consecutive terms in the event an exceptional sentence is appropriate. We need not resolve the question of whether the rationale of *Mulholland* would authorize an exceptional sentence here due to the second critical factual difference between that case and this one.[10]

That critical difference is that there was no request for an exceptional sentence here, although there was one in *Mulholland*. 161 Wn.2d at 326. That means that to raise this issue at all, Ms. McFarland has to attack her counsel's performance and show that her representation fell below professional norms. In light of the lack of any history of other counsel successfully making a similar argument, we cannot conclude as a matter of law that counsel failed to meet professional standards. Nonetheless, it is still possible for Ms. McFarland to prevail on this point if she can present evidence that her counsel erred

---

[10] An argument on this point should involve any legislative history materials that would shed light on the meaning of RCW 9.41.040(6). *See State v. Murphy*, 98 Wn. App. 42, 47-49, 988 P.2d 1018 (1999) (discussing legislative intent).

18

because he did not pursue an exceptional sentence that was in fact available to her.[11] To do so, however, she will have to marshal that evidence and argument in a personal restraint petition (PRP) since the necessary evidence is not in the record of this appeal. *See McFarland*, 127 Wn.2d at 338 (PRP appropriate vehicle for establishing counsel ineffectiveness when necessary facts are not in the record).

Accordingly, we conclude that Ms. McFarland has not established that her counsel rendered ineffective assistance at sentencing. The convictions are therefore affirmed.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Siddoway, C.J.

---

[11] Mere disagreement with a standard sentence range is not a basis for an exceptional sentence. *State v. Freitag*, 127 Wn.2d 141, 144-145, 896 P.2d 1254, 905 P.2d 355 (1995). Sentencing for this type of offense is harsh by legislative design. *Murphy*, 98 Wn. App. at 49 n.8.

No. 32873-2-III

FEARING, J. (concurring) — I concur in the majority's affirmation of the convictions of Cecily McFarland. I write separately because I disagree with one of the rulings of the majority. I would rule that the trial court abused its discretion when allowing the State to show the jury large portions of the five-minute, thirty-nine seconds arrest video.

The majority writes that the State offered that portion of the video, in which Cecily McFarland denies being present at the Legault home, as evidence to show McFarland's consciousness of guilt. Majority at 10. I question how one's denial of being present during a crime shows consciousness of guilt. Perhaps the tone of voice or mannerism accompanying the denial could tend to show a guilty conscience, but the State does not base a claim of relevance on these airy considerations. Nevertheless, at trial, defense counsel agreed that these portions of the video may be shown.

The majority writes that "[t]hat type of evidence long has been admissible," citing *State v. Bruton*, 66 Wn.2d 111, 112-13, 401 P.2d 340 (1965). Majority at 10. Our high court wrote, in *Bruton*, that evidence of flight is admissible. The high court reversed the conviction of Virgie Washington, nonetheless, because of lack of evidence of flight.

More importantly, the *Bruton* court did not address whether one's denial of guilt tends to establish one's guilt.

During the video, Cecily McFarland occasionally denied being present at the Legault home during the theft. Because of the prejudicial nature of the video, the trial court should have limited the State to playing one instance of the denial. The cumulative nature of evidence is a basis for excluding evidence. ER 403. Nevertheless, again, defense counsel agreed that the denial could be shown to the jury and counsel did not object to repetitive showing of the denial.

The video was highly prejudicial to Cecily McFarland. The video showed her slovenly dressed and in handcuffs, included a discussion of her drug use, contained a discussion of the legal nature of burglary, captured the reading of the *Miranda* rights during which McFarland quoted some of the rights, and recorded her repeated use of the "f" word. A perceptive viewer might conclude McFarland to be intoxicated or under the influence of drugs while videotaped. During the video, the arresting officer suggested that McFarland was a flight risk and falsely suggested that fingerprints might link McFarland to the crime. None of this video material tended to prove that McFarland committed any crime. A jury should not see an accused in handcuffs at trial. *State v. Finch*, 137 Wn.2d 792, 859, 975 P.2d 967 (1999). No purpose serves to not extending this rule to a video. McFarland's potty mouth could lead a juror with a stereotypical view of a criminal to regard such language to imply guilt. McFarland's quoting of *Miranda* rights would signal to jurors that she had been arrested before.

Despite an abuse of discretion in playing the entire video to the jury, I would affirm the conviction because the error was harmless. Erroneous evidentiary rulings that do not impact a constitutional right are not reversible error unless, within reasonable probabilities, the outcome of the trial would have been materially affected if the error had not occurred. *State v. Brown*, 113 Wn.2d 520, 554, 782 P.2d 1013, 787 P.2d 906 (1989). Cecily McFarland does not claim constitutional error.

At trial, Cecily McFarland admitted to being present at the Legault home during the burglary. She previously lived at the home and would have knowledge as to the location inside the residence of the pilfered property. Her codefendant would not have sought to burglarize the home without input from McFarland. The portions of the video admitted with the consent of McFarland also showed her handcuffed and broadcasted her use of the "f" word. Therefore, showing the permissible portion of the video already caused harm.

I CONCUR:

_____
Fearing, J.

3