# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　　　Respondent,<br><br>　　v.<br><br>RICK ALAN JOHNSON,<br><br>　　　　　　　　　　Appellant. | No. 56682-6-II<br><br>UNPUBLISHED OPINION |

MAXA, J. – Rick Johnson appeals his convictions for residential burglary and harassment (bodily injury). The convictions arose out of an incident where Johnson climbed through his former girlfriend's window and threatened her. The former girlfriend called 911. The trial court admitted a recording of the 911 call into evidence even though the former girlfriend was not available to testify at trial.

We hold that (1) the statements in the 911 call were admissible under the excited utterance exception to the hearsay rule, and (2) admitting the 911 call did not violate Johnson's right to confront witnesses against him because the statements made in the call were not testimonial. Accordingly, we affirm Johnson's convictions.

## FACTS

Johnson and Marla Jackson had been in a relationship, but they recently had broken up. Johnson did not live with Jackson in her apartment.

In July 2021 at approximately 10:00 PM, Johnson knocked on Jackson's front door. When Jackson did not answer, Johnson opened and started to crawl through her bedroom window. This startled Jackson and woke her up. Jackson told Johnson not to enter, but he did anyway. Jackson ran upstairs and went inside her neighbor's apartment. Johnson also went up the stairs and started knocking on the neighbor's door.

Jackson's neighbor called 911. The 911 operator asked to speak with Jackson. Jackson told the operator, "I was asleep and [Johnson] just jumped in my window, and he's standing outside of her door trying to open her door and he wants to hurt me. He's knocking on my door – knocking on her door. He's outside the door and he's got his hand on the door knob." Ex. 5C at 00:59 to 1:20. In response to the operator's questions, Jackson told the operator Johnson's name, physical description, and a description of Johnson's vehicle. Jackson told the operator that Johnson said "I'm gonna f**k you up" when he entered through her window. Ex. 5C at 3:20 to 3:31.

The operator asked Jackson if Johnson was still standing outside the door and Jackson looked through her neighbor's peep hole. In a hushed voice, Jackson told the operator that she thought that Johnson had covered the peep hole because she could not see anything out of it. Jackson then corrected herself, saying she could not see through the peep hole because the outdoor light was out.

The operator told Jackson that officers were arriving in the area and that she would stay on the phone with her until they arrived. The operator then told Jackson that the officers arrived. When the officers knocked on the door, Jackson gasped and said, "He's knocking! Or is that the officers?" Ex. 5C at 5:48 to 5:50.

2

As police officers approached Jackson's apartment, they observed that the front door was open. They observed Johnson walking out of Jackson's apartment and detained him. Johnson was arrested, and the State charged him with residential burglary and harassment (bodily injury).

*Trial Court Proceedings*

The prosecutor filed a motion in limine to admit the 911 call. The State argued that the 911 call was admissible under either the excited utterance or the present sense impression exceptions to the hearsay rule and that admission of the 911 call would not violate Johnson's right to confront witnesses against him because the statements were not testimonial. Johnson argued that the excited utterance exception should not apply because Jackson was not under the stress of the exciting event and that admission of the 911 call would violate his right to confront witnesses against him because it was testimonial.

After making some redactions, the trial court suggested without expressly ruling that the statements in the redacted 911 call were admissible under the excited utterance exception because Jackson's hushed voice and startled reaction to the knock on the door indicated that she was still under the stress of the exciting event during the call. The trial court ruled that the statements in the 911 call were nontestimonial and did not violate Johnson's right to confront witnesses against him because they were made to aid in an ongoing emergency.

Jackson was not present at trial. The trial court admitted the 911 call into evidence. The State also presented testimony and body camera footage from the police officers who arrived on the scene. This included testimony from officer Peter Taing that Jackson was distraught, crying, scared, and physically shaking when he arrived at the scene.

The trial court admitted a letter Jackson wrote to the court recanting her statements to the 911 operator. At trial, Johnson's counsel read the redacted letter to the jury to impeach Jackson's credibility.

The jury convicted Johnson of residential burglary and harassment (bodily injury). Johnson appeals his convictions.

## ANALYSIS

A. APPLICABILITY OF EXCITED UTTERANCE EXCEPTION

Johnson argues that Jackson's statements to the 911 operator were hearsay and that the excited utterance exception to the hearsay rule was inapplicable. We disagree.

1. Legal Principles

Under ER 801(c), "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay evidence generally is inadmissible unless it falls within a recognized exception to the hearsay rule. ER 802; *State v. Alvarez-Abrego*, 154 Wn. App. 351, 366, 225 P.3d 396 (2010).

ER 803(a)(2) provides a hearsay exception for statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The exception is based on the idea that statements made while a person is under the stress of an exciting event will be spontaneous rather than based on reflection or self-interest, and therefore are more likely to be true. *See State v. Chapin*, 118 Wn.2d 681, 686, 826 P.2d 194 (1992). "[T]he key determination is whether the statement was made while the declarant was still under the influence of the event to the extent that the statement could not be the result of

4

fabrication, intervening actions, or the exercise of choice or judgment." *State v. Woods*, 143 Wn.2d 561, 597, 23 P.3d 1046 (2001).

For the excited utterance exception to apply, the declarant's statement must meet three requirements: "(1) a startling event or condition occurred, (2) the declarant made the statement while under the stress of excitement of the startling event or condition, and (3) the statement related to the startling event or condition." *State v. Ohlson*, 162 Wn.2d 1, 8, 168 P.3d 1273 (2007). The first two elements may be established by evidence extrinsic to the declarant's plain words "such as the declarant's behavior, appearance, and condition; appraisals of the declarant by others; and the circumstances under which the statement is made." *State v. Young*, 160 Wn.2d 799, 809-10, 161 P.3d 967 (2007).

When assessing whether a statement qualifies as an excited utterance, we may refer to relevant factors such as the statement's spontaneity, the passage of time, the declarant's emotional state, and the declarant's opportunity to reflect or fabricate a story. *State v. Williamson*, 100 Wn. App. 248, 258, 996 P.2d 1097 (2000). An excited utterance can be made in response to a question. *Id.*

We review a trial court's ruling on the applicability of the excited utterance hearsay exception for an abuse of discretion. *State v. Rodriquez*, 187 Wn. App. 922, 939, 352 P.3d 200 (2015). A trial court abuses its discretion if its decision is "manifestly unreasonable or based on untenable grounds or reasons." *Id.*

2.    Analysis

First, Jackson experienced a startling event.  Jackson woke up to find Johnson at her window, and he then climbed through the window.  Johnson told her, "I'm gonna f**k you up" when he entered through the window.  Ex. 5C at 3:20 to 3:31.

Second, Jackson's conversation with the 911 operator was made under the stress of excitement of that event.  Jackson ran to her upstairs neighbor's apartment to call 911 immediately after Johnson entered through her window.  Johnson followed Jackson to her neighbor's apartment.  Johnson was standing outside the door, knocking and trying to open the door during the 911 call.  Jackson said that Johnson wanted to hurt her.  This means that the "event" still was ongoing when Jackson talked with the 911 operator.  The circumstances surrounding the call support the conclusion that Jackson still was under the stress of excitement when she made her statements to the 911 operator.

Johnson argues that there is no indication that Jackson was excited during the call.  She spoke in the past tense, her demeanor was calm throughout the call, and she did not cry or scream.  However, Jackson spoke in a hushed voice, and whispered when she approached the door where Johnson was standing outside.  And Jackson was audibly startled when law enforcement knocked on the door and exclaimed "He's knocking!" even though the operator had just informed Jackson that law enforcement had arrived.  Jackson's quiet tone of voice and heightened reaction to the knock at the door are consistent with someone hiding from a perceived threat.  These facts indicate that Jackson still was under the stress of excitement when she made her statements to the 911 operator.

Officer Taing's trial testimony supports a conclusion that Jackson was still under the stress of the event. Taing testified that when he spoke to Jackson in the moments immediately after she made the 911 call, "[s]he appeared highly distraught. She was crying. She appeared scared to me. She was physically shaking." Report of Proceedings (Dec. 7, 2021) at 16. Because Jackson was distressed immediately after the 911 call, it is reasonable to conclude that she also was distressed during the 911 call.

Third, Jackson's statements related to the startling event. Jackson told the 911 operator what had happened. And her description of Johnson and other details were directly related to the event.

Accordingly, we hold that the trial court did not abuse its discretion by admitting the 911 call into evidence under the excited utterance exception to the hearsay rule.[1]

B.      CONFRONTATION CLAUSE

Johnson argues that the trial court violated his right to confront witnesses against him when the trial court admitted the 911 call because the statements in the 911 call were testimonial. We disagree.[2]

Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution, accused persons have the right to confront witnesses against them.

---

[1] Because we hold that the excited utterance exception applies, we do not address the exception for present sense impressions under ER 803(a)(1).

[2] Johnson also argues that the confrontation clause was violated because Jackson was not "unavailable" to testify. Because we conclude that the 911 call was not testimonial, we need not address this issue.

We review confrontation clause challenges de novo. *State v. Burke*, 196 Wn.2d 712, 725, 478 P.3d 1096, *cert. denied*, 142 S. Ct. 182 (2021).

The confrontation clause prohibits the admission of "testimonial statements" made by an unavailable declarant when the defendant has not had a prior opportunity to cross-examine the declarant. *Id.* We use the primary purpose test to determine whether an out-of-court statement is testimonial. *Id.* at 725-26. We consider the circumstances under which the statement was made in determining the primary purpose of a statement. *Id.* at 726.

"Statements are testimonial when they are made to establish past facts in order to investigate or prosecute a crime." *Id.* However, statements made for another primary purpose are nontestimonial. *Id.* at 727. The Supreme Court in *Burke* stated,

> Statements made to assist police in addressing an ongoing emergency is a well-established nontestimonial purpose. For example, frantic statements to a 911 emergency operator describing the identity of an assailant in a domestic disturbance *in progress* were nontestimonial because the declarant was seeking help in the face of immediate danger.

*Id.* In addition, statements made to persons other than law enforcement officers are less likely to be deemed testimonial. *Id.* at 728.

The recording and circumstances of the 911 call support a conclusion that Jackson made her statements to the 911 operator during an ongoing emergency for the purpose of receiving help. Jackson was not merely providing information to assist in the investigation of a crime. She was urgently seeking assistance in an ongoing situation. As Jackson spoke with the 911 operator, Johnson was knocking and trying to open the door. Jackson stated that "he wants to hurt me." Ex. 5C at 1:10-1:12. All of Jackson's statements were made for the purpose of enabling law enforcement to respond to an ongoing emergency.

No. 56682-6-II

We conclude that the trial court did not err in determining that Jackson's statements were nontestimonial. Accordingly, we hold that admission of the 911 call did not violate Johnson's right to confront witnesses against him.

CONCLUSION

We affirm Johnson's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

GLASGOW, C.J.

VELJACIC, J.

9